INSURANCE CO. *v.* MORTON-SCOTT-ROBERTSON CO.

*(Nashville.* March 9, 1901.)

1. INSURANCE, FIRE. *Arbitration is a condition precedent to maintenance of action on policy, when.*

   Arbitration must be made a condition precedent to action on a fire policy, and not a mere independent and collateral agreement, in order to render the insured's failure or refusal to arbitrate a bar to his action. It is not essential that the condition be expressed in terms, but it is sufficient if it can be fairly implied from a consideration of the entire policy. (*Post, pp. 569–575.*)

2. SAME. *Same. Case in judgment.*

   Arbitration becomes a condition precedent, and the insured's refusal to enter into it will bar his action on a fire policy that stipulates for arbitration without making it in terms a condition precedent and contains these additional clauses, to wit : "This company shall not be held to have waived any of the provisions or conditions of this policy, or any forfeiture thereof by any requirement, act, or proceeding on its part relating to the appraisal on any examination herein provided for, and the loss shall not become payable until sixty days after the notice, ascertainment, estimate and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisal has been required. No suit or action on this policy for the recovery of any claims shall be sustainable in any court of law or equity until after full compliance by the insured, with all the foregoing requirements." (*Post, pp. 569–575.*)

3. SAME. *Joint demand for appraisal insufficient.*

   A joint demand for an appraisal made by several co-insurers of the same property, whose several policies provide for an appraisement by two, one to be selected by the company and the other by the insured, who, in case of disagreement, are to call in a third, is insufficient as to each and all the insurers. There must be, in such case, a separate demand by each company. (*Post, pp. 575–578.*)

Insurance Co. *v.* Morton-Scott-Robertson Co.

4. SAME. *Demand for appraisal of salvage unauthorized and invalid.*

A demand by an insurance company for the appraisal of a salvage claim is ineffectual for any purpose and invalid under a policy providing only for appraisement of the "loss or damage" sustained.

There can be, in such case, but one appraisal demanded, and that of the "loss in the aggregate." *(Post, p. 578.)*

5. SAME. *Sale of part of salvage by insured does not defeat appraisal, when.*

It affords no lawful ground for the insurer's refusal to proceed with an appraisal proposed by himself and assented to by the insured, that the insured had, under a policy giving the insurer the option to take all or any part of the saved articles at their appraised value, disposed of part, to wit: One-seventh of the salvage, when such disposition of salvage was made by implied consent of the insurer, and a full description of the articles sold was preserved, and there remained in specie an abundance of the articles sold to satisfy the particular insurer's claim. *(Post, pp. 578–583.)*

6. SAME. *Expense of selling salvage, how borne.*

Where salvage is sold by the insured in connection with his other business it is proper to charge it with a due proportion of the expenses of the entire business. *(Post, pp. 583–585.)*

Case cited : German Bank *v.* Haller, 103 Tenn., 84.

---

FROM DAVIDSON.

---

Appeal in error from Circuit Court of Davidson County. JNO. W. CHILDRESS, J.

J. J. VERTREES and PILLOW & TYNE for Insurance Co.

LELLYETT & BARR and JNO. A. PITTS for Morton-Scott-Robertson Co.

McAlister, J. This is a suit upon a policy of fire insurance. Verdict and judgment were in favor of plaintiff for the sum of $1,064.32, amount of the policy and interest. The company appealed, and, among other assignments of error, it is urged that there is no evidence to support the verdict. The policy in suit insured the plaintiff against direct loss or damage by fire to their stock of carpets, furniture, etc., contained in their storehouse on Union Street, in the city of Nashville. The aggregate insurance on their stock was $31,000, covered by twenty-three policies, issued by seventeen different companies. The concurrent insurance was authorized by the several policies, and no question is made in respect of additional insurance.

Companies representing $15,000 of this insurance settled and adjusted their liability without suit.

The fire occurred on December 9, 1898, and there is evidence tending to show that the loss sustained was largely in excess of the entire insurance. The value of the stock at the time of the fire is shown by the following table, to wit:

(1) Inventory June 1, 1898..............$29,523 40
(2) Goods purchased between June 1, and
      December 9, 1898 ................ 30,458 69
(3) Goods sold, charged, and not de-
      livered ......................... 473 00
(4) Goods held in trust for others.... 85 00
(5) Appreciation by advance in prices. 4,465 49

        Total ....................... ...............$65,035 58

The gross sales from June 1 to December 9, 1898 .....................$34,892 54
These goods cost the sum............. 23,147 00
Total value at time of fire............ 41,888 58

These items are sustained by ample evidence to have warranted the jury in finding them correct.

It is objected that the item of appreciation of stock amounting to $4,465.49 was not included in the statement of loss submitted by the company to the insurance agents on Monday succeeding the fire. That is explained, however, by the fact that the first statement was made up hurriedly, and this item was overlooked.

It was stated and claimed at the first interview between the plaintiff and the insurance adjusters, and steadily insisted on throughout the negotiations that followed. It is supported by material evidence, and must be held to have been established by the verdict of the jury.

The proof shows that on Monday, December 12, succeeding the fire, adjusters representing the various insurance companies interested met at Nashville and entered into an organization, electing a chairman and secretary. This board adopted the following resolutions, to wit:

"1. In all matters of difference, a majority as represented by the insurance companies present shall rule.

"2. That stock in basement and grade floor

22 P—36

shall be removed, and then if the committee deems advisable shall be disposed of."

This board, it appears, continued in session from day to day until the twenty-second of December, when they entered into an agreement by resolution "that there should be no independent action, but that they all should communicate and confer with each other."

It appears that on Tuesday succeeding the fire there was a conference between the adjusters and representatives of plaintiff, and a discussion ensued as to what disposition should be made of the salvage or damaged goods saved from the fire. A committee was appointed to consider this question, and after visiting the premises and inspecting the condition of the damaged goods, the committee recommended that the salvage in the basement and on the grade floor be offered for sale to the highest bidder. An advertisement was accordingly made in the public prints, but no acceptable bid was received.

It appears that about this time the adjusters concluded to demand an appraisement of the saved goods, and such an appraisal was proposed to the representatives of the insured. The insured insisted that the first step in an appraisement was to ascertain the value of the entire stock of goods at the time the fire occurred, and that at the same time they could find out the value of the goods saved, and thus settle the whole loss. The

adjusters, however, declined this proposition, insisting upon an appraisal of the salvage alone. The insured insisted that he was ready and willing for an appraisal provided it settled everything.

The adjusters had before them all the policies, books, papers, and invoices of the insured, including a statement of the loss. They inspected the wreck and saw the salvage, but they made no estimate of its value, nor a statement of the value of the stock at the time of the fire, nor any estimate of loss, nor did they agree to the correctness of any item in plaintiff's statement of loss. The adjusters simply demanded an appraisement of the salvage, but not an appraisement of the entire loss.

It further appears that on December 16 the several adjusters made a joint demand for appraisal as follows, to wit:

"A difference having arisen in the amount of the damage done upon stock of goods by reason of a fire which occurred on December 9, 1898, we now demand that the amount of these damages be submitted to arbitration as provided for in the section of the policies under which you make your claims." This demand was signed jointly by all the special agents and adjusters representing the companies interested. The plaintiff understood this letter to be a joint demand for an appraisal of the salvage alone, hence, in its reply, after referring to the fact that its statement of loss

had not been seriously controverted by the agents, stated, "You now demand of us an appraisal of the salvage, and propose to leave the question as to cash value of the stock a matter for consideration after the appraisement has been made. To this we are unwilling to assent." The letter continued, "A committee was appointed by you to examine the premises. That committee reported that it would be advisable to offer for sale the salvage in the basement and on the first floor. To this we gave our assent. We are not averse to an appraisement, but object to an appraisement of the salvage and afterwards another appraisement as to value of stock."

In view of what had been transpiring in the negotiations of the board and the insured for a settlement, the joint demand was understood by the plaintiff, as a demand for the appraisal of the salvage alone. Plaintiffs in their reply so informed the adjusters, and the latter did not correct this impression. They made no reply to the insured's letter. However, the oral negotiations and conferences continued until December 22, when further effort at a settlement was suspended. There is evidence tending to show that in the meantime a representative of the insured met Col. Young, chairman of the board of adjusters, and asked him if there was going to be any trouble about the salvage, and the latter responded, "Go ahead and handle the salvage; you have a per-

fect right to do it. Go ahead." Thereupon plaintiff rented Amusement Hall, and about the eighth of January began to move therein the damaged stock saved from the first floor and basement of the store. These goods were cleaned and renovated, and after being thoroughly advertised in the public prints, were sold at public auction for $1,250. Private sales amounting to $300 or $400 had theretofore been made. It should be remarked that the goods on the second and third floor of the store were not removed, but were reserved for private sale at some future time when the business of the firm should be resumed.

Thus matters rested until January 16, 1899, when the special agents and adjusters made separate and distinct written demands for an appraisal. This was done in all likelihood to remedy any legal objection that might be made to the joint demand for an appraisal which they united in making December 16th ult. On January 20 the plaintiff transmitted to the home office of the defendant company formal proofs of loss resulting from said fire. The defendant company replied January 31, 1899, acknowledged receipt; and concluding its letter as follows: "We renew our previous demand for an appraisal of the value of the goods saved from the fire and the damage done to them, in order that compliance with the terms of the contract between you and the company may be had, differences having arisen

between us concerning the amount of your loss."
Thus it will be seen that as late as January
31 this defendant company is only insisting upon
an appraisal of the salvage. It renews its pre-
vious demand on this subject.

The plaintiff, on February 21, wrote to de-
fendant company acknowledging receipt of letter
of January 31 furnishing an inventory of saved
goods, with an estimate of their value. This
letter, after dealing with certain matters at issue,
states, viz.:

"In conclusion we beg to submit that the right
of the Palatine Insurance Company to demand an
appraisal has, in our judgment, been waived, but
we are still ready to agree to an appraisal, and
consent that it be had according to the terms of
the policy. You may, therefore, come forward and
at once enter into a final arrangement with us
for an appraisal."

The defendant company replied to this letter,
in which they stated that the fact that a part
of the salvage had been disposed of would pre-
sent a serious obstruction in the way of an ap-
praisal, and inquired whether it was true that the
salvage had been disposed of. There is evidence
tending to show that the defendant company had
been apprised of this fact for almost six weeks,
and yet it expresses surprise at the statement of this
fact in the plaintiff's letter. On March 3, 1899,
plaintiff replied that full evidence of the value

of the salvage sold had been preserved, and that more than four-fifths of the salvage (in a greatly improved condition) was still in the building ready to be viewed by the appraisers. Concluding, viz.:

"Therefore we again express our assent to appraisal, and trust it will be no longer delayed by you."

Defendant company replied to plaintiff's letter on the seventh of March, stating that they would not enter into a "fragmentary appraisal after plaintiff had sold and disposed of a part of the salvage." This letter closed the correspondence, and thereupon plaintiff brought this suit.

The principal ground relied on by defendant company to defeat the collection of the policy is that the assured refused to submit to an appraisal or arbitration as provided by the insurance contract, and that this was a condition precedent to any right of action on the policy, or liability against the defendant. The provisions of the policy necessary to be noticed, in order to an intelligent understanding of the controversy, are the following:

"This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation; however caused, and shall, in no event, exceed what it would then cost the insured

to repair or replace the same with material of like kind and quality. Said ascertainment, or estimate, shall be made by this company and the insured, or if they differ, then by appraisers as hereinafter provided, and the amount of loss or damage having been thus determined, the sum for which this company shall be liable in pursuance of this policy shall be payable sixty days after due notice, ascertainment, estimate, and satisfactory proofs of the loss have been received by this company in accordance with the terms of this policy. It shall be optional, however, with this company to take all or any part of the articles at such ascertained or appraised value, and also to repair, rebuild, or replace the property lost or damaged with other of like kind and quality, within a reasonable time, on giving notice, within thirty days after the receipt of the proof herein required, of its intention so to do. But there can be no abandonment by this company of the property described."

The "hereinafter provided" of this original and leading clause reads as follows: "In the event of disagreement as to the amount of the loss, the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall elect a competent and disinterested umpire. The appraisers together shall then estimate and appraise the loss, stating sep-

arately sound value and damage, and, failing to agree, shall submit their differences to the umpire, and an award, in writing, of any two shall determine the amount of such loss. The parties thereto shall pay the appraiser respectively selected by them, and shall bear equally the expenses of the appraisal and umpire. This company shall not be held to have waived any of the provisions or conditions of this policy, or any forfeiture thereof, by any requirement, act, or proceeding on its part relating to the appraisal or any examination herein provided for, and the loss shall not become payable until sixty days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisal has been required. (Lines 86 to 95 of the policy.) No suit or action on this policy for the recovery of any claim shall be sustainable in any Court of Law or Equity until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months after the fire."

It was assumed by the trial Judge in his charge to the jury that the stipulation of the policy in respect of appraisal was a condition precedent to any right of action on the policy. This proposition is seriously controverted in this Court by counsel for the insured, his contention being that such stipulation is a mere collateral

and independent condition, a breach of which will not work a forfeiture of the policy, because not so expressly provided therein. It is insisted on behalf of the company that the general clause following the enumeration of the terms and conditions of the policy constitute appraisal a condition precedent. The general clause at the foot of the policy is, viz.: "No suit or action on this policy for the recovery of any claim shall be sustained in any Court of Law or Equity until after full compliance by the insured with all the foregoing requirements," etc.

It is argued that the policy provides that ascertainment or estimate shall be made by both parties, and if they differ as to their respective estimates, then they can have recourse to appraisal "as hereinafter provided," and that it is hereinafter provided that appraisal is dependent, first, upon the event of disagreement, and, second, upon the fact of its being required by the company. In other words, that it is a condition optional with the company, and does not establish a forfeiture for a failure to observe its conditions.

It is then argued that in order for a failure to arbitrate to operate against the insured, the necessity for an award must be expressly made a condition precedent in the policy, citing *Reed* v. *Ins. Co.*, 103 Iowa, 307; *Reed* v. *Washington*

*F. & M. Ins. Co.,* 138 Mass., 572; *Clement* v. *British-Am. Ins. Co.,* 141 Mass., 298.

In *Insurance Company* v. *Alvard,* 61 Fed. Rep., 755, it was held that in order to make such award a condition precedent to the right of maintaining suit, it must be so expressed in the policy, unless necessarily implied from its terms. A mere provision in the policy that the amount to be paid in case of disagreement shall be submitted to arbitration does not prevent the insured from maintaining an action, unless the policy further provides that no action shall be maintained until afterward. Such agreement to submit to arbitration is regarded as a collateral and independent agreement, a breach of which, while it will support a separate action, cannot be pleaded in bar to an action on the principal contract. "There is nothing in the terms of the policy," said the Court, "which expressly, or by implication, forbids the insured from bringing suit until after the amount of the loss had been submitted to arbitration and an award had been made, and therefore we must consider the provisions in the policy relating to this object as constituting a collateral and independent condition, and not one which was precedent to maintaining an action."

In looking to this case it will be seen that the clause in the policy on the subject of arbitration or appraisal is identical with the provisions of defendant's policy on the same subject, but it

does not appear from the opinion that the policy contained the general clause which is found in the present policy, to wit: "No suit or action shall be brought until after full compliance by the insured with all the foregoing requirements," etc.

In *Hamilton* v. *Liverpool, London & Globe Ins. Co.,* 136 U. S., 242, it was held that a condition in a policy of fire insurance that any differences arising between the parties as to the amount of loss or damage of the property insured shall be submitted, at the written request of either party, to the appraisal of competent and impartial persons, whose award shall be conclusive as to the amount of loss or damage only, and shall not determine the question of the liability of the insurance company, etc., and that until such appraisal and award no loss shall be payable or action maintainable, is valid. Said Mr. Justice Gray, who delivered the opinion of the Court, "The appraisal, when requested in writing by either party, is distinctly made a condition precedent to the payment of any loss, and to the maintenance of any action."

The question again arose in *Hamilton* v. *Home Ins. Co.,* 137 U. S. Mr. Justice Gray again delivered the opinion of the Court, and said: "This case resembles, in some aspects, that of *Hamilton* v. *Liverpool, London & Globe Ins. Co.,* 136 U. S., but it is essentially different in this

important and controlling element, that there was no provision of the policy postponing the right to sue until after an award. If the contract provides that no action upon it shall be maintained until after such award, then, as was adjudged in *Hamilton* v. *Liverpool, London & Globe Ins. Co.*, above cited, and in many cases therein referred to, the award is a condition precedent to the right of action. But when no such condition is expressed in the contract, or necessarily to be implied from its terms, it is equally well settled that the agreement for submitting the amount to arbitration is collateral and independent, and that a breach of this agreement, while it will support a separate action, cannot be pleaded in bar to an action on the principal contract."

It is conceded that in the policy before us there is no express provision postponing suit until after appraisal or award, but it is assumed that the general clause of the policy is equally as efficacious, namely: "No suit or action shall be brought until after full compliance by the insured with all the foregoing requirements" referring to all the terms and conditions of the policy.

In addition to this the policy provides that "the loss shall not be payable until sixty days after the notice, ascertainment, estimate, and satisfactory proof of loss have been received by the company, including award by appraisers, when appraisal has been required." It is not necessary, as decided in

numerous cases, to constitute a condition precedent, that there should be express language prohibiting suit until award is made. It is sufficient, if, construing the entire contract, such intention is necessarily implied.

In *Conn. Fire Ins. Co.* v. *Hamilton,* 59 Fed. Rep., the Court said, viz.: "In some of the leading cases, where it was held that the terms of the contract established a condition precedent, there was no express provision that an action should not lie before the award was made. A condition necessarily implied from the terms of the contract is treated as equivalent to an express agreement that no action shall be brought until the award is obtained. It is always a question of construction. Whatever the language may be, if the intention of the parties is sufficiently apparent, effect will be given it."

In *Mosness* v. *German-Am. Ins. Co.,* 50 Minn., 341, "the policy provided for the appointment of appraisers in the event of the disagreement between the company and the assured as to the amount of the loss, and also provided that no action could be brought until after full compliance by the assured with all the foregoing requirements," it was held that arbitration and award was a condition precedent to recover on the policy.

Said the Court, construing together, as they must be construed, the various provisions found in the

present policy in reference to an appraisal and award, "they constitute a condition precedent to plaintiff's right of action when circumstances transpired to which the language was applicable—that is, when the insurer and insured disagreed on the amount of the loss."

We think, upon a fair construction of the policy now in suit, compliance with the appraisal clause must be regarded as a condition precedent to the maintenance of the suit.

The second assignment is that the Court erred in charging as follows: "It is proper here for the Court to instruct you that until January 16, 1899, there had been no legal demand by the defendant upon the plaintiff for an appraisement in accordance with the terms and conditions of the policy—that is, of an appraisement of the loss, and damage, theretofore the efforts having been made either verbally or by joint demand with the other companies carrying this insurance, neither of which was valid and binding."

The criticism made upon this charge is two-fold. First, that the Court should have instructed the jury what constituted a legal demand, and let the jury determine from the facts and law as charged by the Court whether or not legal demand for appraisal had been made. Second, that as the policy itself does not require a written demand for an appraisal, a verbal demand would have been sufficient.

We do not concur with counsel in construing this charge to mean that a verbal demand for an appraisal of the whole loss would not be sufficient under the policy. The context of the charge shows that the trial Judge had reference to the demand for an appraisal of the salvage. The Court had just instructed the jury that such a demand was not authorized by the policy. The demand for an appraisal of the salvage was in fact a verbal demand, but in the opinion of the Court was not valid whether verbal or written. It was to this demand the Court had reference when he said that the verbal demand made was not valid and binding upon the plaintiff. The Court did not say that a verbal demand for an appraisal of the whole loss would be insufficient.

The record shows that the only demand for an appraisal made by the defendant company prior to January 16, 1899, was the joint demand which it made in connection with the other companies on December 16, 1898. Eleven agents, representing as many different companies, joined in the demand upon the plaintiff that the amount of his damages be appraised as provided for in the section of the policies under which the loss was claimed. This was not a legal demand.

Says Mr. Joyce in his work on insurance, Sec. 3245, viz.: "A joint demand for an appraisal by several insurance companies is not within the terms of a policy issued by one of the companies pro-

viding for an appraisement by two persons, one to be selected by the company and the other by the insured, who in case of disagreement are to call in a third. There should be a separate demand." Citing *Connecticut Fire Ins. Co.* v. *Hamilton,* 59 Fed. Rep., 258; *Hamilton* v. *Phoenix Ins. Co.,* 61 Fed. Rep., 385; *Harrison* v. *German-American Fire Ins. Co.,* 67 Fed. Rep., 585.

In *Connecticut Fire Ins. Co.* v. *Hamilton,* 59 Fed. Rep., it appeared that the agents of twelve insurance companies interested in the loss joined in a demand upon the insured that the question of the value of and the loss upon the stock be submitted to competent and disinterested persons chosen as provided for in the several policies · of insurance under which claim is made, etc. Said the Court: "That was not a demand for an appraisal by the insurance companies, such as its policy gave it the right to make. It (the company) did not acquire its rights in any respect from the policies of other companies, and it had no legal concern with their disputes, or the mode to be adopted for their settlement, and had no obligation to champion their cause or to mix its controversy with theirs, and the insured was not bound to accept such proposition for determining the value and damage as was demanded by the companies, this among them."

We therefore hold, under the general rule, that

22 P—37

this joint demand for an appraisal was illegal, and imposed upon the assured no duty to enter upon an appraisal or arbitration. So that we concur with the trial Judge in his instruction to the jury that there was no legal demand by defendant company for an appraisal until January 16, 1899, when it made a separate demand.

We are also of opinion that any demand for the exclusive appraisal of the salvage was not warranted by the policy. The appraisal or arbitration clause provides that in the event of disagreement as to the amount of the loss, it shall be ascertained by two competent and disinterested appraisers. The appraisers shall estimate the loss, stating separately sound value and damage, etc. It was never contemplated that either party should have the right to demand separate and successive appraisals of different kinds of demands entering into the amount of the loss. The object of appraisal is to fix the loss in the aggregate, and this result cannot of course be reached by ascertaining the value of one or more constituent elements of the loss. We are therefore of opinion that the insured was well warranted by the terms of the policy in declining the demand of the company for an appraisal of the salvage alone. Of course we do not hold that the parties could not by consent agree on a partial appraisement.

It appears that on January 16, 1899, the defendant company addressed a letter to the plain-

tift stating that "a difference having arisen in the amount of the damage done to your stock of goods by reason of the fire, we now demand on the part of this company the amount of these said damages be submitted to appraisal as provided for in the section of the policy of the Palatine Insurance Company, London, Limited, under which you make your claim."

This communication, it will be observed, contains a separate demand for a general appraisal, and was such a demand as the company was authorized to make under the appraisal clause of its policy. The insured did not at once answer this demand, but transmitted to the company, through its attorney, formal proofs of loss. Some correspondence then followed respecting the proofs of loss, and on February 21 the insured agreed to have an appraisal according to the terms of the policy. Defendant company then declined to enter into an appraisal, upon the ground that the insured had sold and disposed of part of the salvage. There is proof tending to show that the insured at that time still had on hand four-fifths of the salvage, and had disposed of the remaining one-fifth with the knowledge and implied acquiescence of the defendant company, its agents or adjusters, or at least with the knowledge of the Board of Adjusters, who were acting in concert and combination. In this connection counsel for defendant company requested the Court to charge,

viz.: "If you find from the evidence that after a period of controversy, in which the parties were unable to agree, they differed in good faith as to the amount of the loss, and that the defendant, in writing, made a separate demand for an appraisement of the loss in accordance with the terms of the policy, and that the plaintiff thereafter, in writing, consented and agreed to an appraisement of the loss in accordance with the terms of the policy, this agreement was a waiver of the right on the part of the plaintiff to insist upon any previous waivers of the defendant. And if you find the facts to be as above stated, and that in the meantime the plaintiff had, without the defendant's consent, sold and disposed of a material part of the salvage goods without informing the defendant thereof in its letter assenting and agreeing to an appraisal, or in any other form, the Court instructs you that the defendant company had the right to refuse to proceed further with the appraisal called for, and the plaintiff cannot recover in this action."

Error is also assigned upon the refusal of the trial Judge to give the following instructions to the jury, namely: "The right of the defendant to take its *pro rata* of the salvage goods at the valuation fixed by the appraisers when an appraisal had been demanded and had, is a valuable right assured to it by the policy or contract, and if, therefore, you find the parties dif-

fered in good faith as to the loss, and the de-
fendant demanded, in writing, an appraisal ac-
cording to the terms of the policy, the demand
being a separate demand, and that the plaintiff
replied thereto assenting and agreeing to an ap-
praisal, the plaintiff thereby waived its previous
right to object to such demand, and bound itself
to enter upon such appraisal as the policy con-
templates and provides for. And if you find that
plaintiff had disposed of a material part of the
salvage goods without the consent of the defend-
ant, either before or after such demand, so that
the same could no longer be appraised or valued,
the Court instructs you that such disposition jus-
tified the defendant in its refusal to proceed
with the appraisal, and precludes the plaintiff from
recovering in this action."

Now we think the instructions asked were prop-
erly refused, for the following reasons: First, the
proof tended to show that the salvage was sold
with the knowledge and acquiescence of the Board
of Adjusters, whose action was binding upon the
defendant company. That board determined by
resolution that the salvage in the basement and
on the first floor should be sold, and advertised
for bids, but could get no reasonable offer. After-
wards Col. Young, chairman of the Board of
Adjusters, told a representative of the plaintiff
to go ahead and dispose of the salvage. Second,
the amount disposed of by plaintiff was but a

small proportion of the salvage, not exceeding probably one-seventh in value, and a sufficient amount was still on hand to have enabled the defendant company to have exercised its option, under the policy, to take its *pro rata* of the salvage.

As already stated there was $31,000 of insurance upon the property, of which $15,000 had been settled before this suit was brought. The adjusting companies settled upon a basis of $28,-000 as covering the entire loss, the insured to keep the salvage. It was after this partial settlement with the other companies that the insured sold about one-seventh of the salvage, preserving a detailed statement of the articles, their value, etc. The total sum realized on the salvage claimed to have been improperly sold, did not exceed $1,500, which left unsold and still on hand about $10,000 of salvage. Now, upon these facts the Circuit Judge instructed the jury, viz.: "The Court instructs you upon this point that the defendant was only interested in said option (that is, the right to take the salvage upon the appraisement) in proportion as the policy issued by it bore to the total number of policies and amounts involved—that is, as one thousand was to thirty-one thousand; and if you should find from the proof that the demand of the defendant, made January 16, for an appraisal was assented to by the plaintiff, who offered to proceed with the same,

and that the defendant refused to proceed therewith, in conformity with his demand, by reason of the fact of the sale and disposal of part of the damaged goods, and that the amount of said damaged goods was only a small proportion of the total amount of such goods, and that notwithstanding said sale by the plaintiff, if there should have been enough of said damaged goods left to. be valued and appraised, out of which the defendant could have exercised its option as stipulated above, and if the amount sold by plaintiff could still have been ascertained and appraised notwithstanding said sale, then, and in that event, the Court instructs you that the defendant cannot rely upon that defense," etc.

We are of opinion that the charge given fully covered this aspect of the case, and that the instructions asked by counsel for defendant company were properly refused.

The next assignment of error is based upon the Court's charge in reference to the apportionment of the salvage expense. The business of the plaintiff was resumed about April 15, after the fire, and the bulk of the salvage goods were carried with the new stock and sold off as opportunity offered.

The Court charged the jury that it was the duty of the plaintiff to have sold the salvage goods to the best advantage, realizing therefrom as much as possible; that on doing this plain-

tiff was entitled to any reasonable cost and expense in preparing these goods for sale and disposal, and that this expense would include any house rent, clerk hire, taxes, or other legitimate expenses incurred therein, and that if the same (salvage) was kept in the store of the plaintiff in conducting their regular business, if it was handled, cared . for, and sold by the same clerks and force, that said damaged goods should be charged with their proper proportion of the expenses of the same."

The objection to the charge is that the salvage is charged with a proper share of the expenses of plaintiff's entire business after the fire. It is insisted that the sale of the salvage was a mere incident to the general business, and that only such expenses should be allowed plaintiff as were incurred because of and on account of the salvage. The Court, it will be perceived, left it to the jury to say, in view of all the facts, whot would be a proper proportion of the expenses with which the salvage goods should be charged.

In *German Bank* v. *Haller,* 19 Pickle, the trustee had put new goods with the trust stock, and expenses, such as store rent salaries, and incidentals, were incurred for both stocks, and the question as to proportioning that expense arose, the trustee insisting . that the trust stock should bear it all. This Court said: "We know of no good reason why a trustee engaged in executing

a trust, and selling goods thereunder, may not engage in a separate and distinct business, that does not interfere with or detract from his duties and services in regard to the former. It may be a circumstance which may be looked to in determining what his compensation should be for the execution of his trust, if it interferes with it, but it is not an item which would swell the assets of the trust. But, while this is true, it is also, as we think, plain that the expense is incurred about both businesses jointly. It should be borne by each in the proper proportion. And the entire burden should not be borne by the trust goods to the exoneration of the other stock. The items in this case for advertising, salaries, and incidentals and store rent were incurred for both stocks, amounting to $5,257.64, and should have been borne in some proper proportion by each." *Idem,* 84 (19 Pickle).

We understand the Court in this instruction to have submitted to the jury the question as to the proper proportion of the expense of the salvage goods, to be determined in view of all the facts surrounding its sale, and we find in this instruction no reversible error.

Affirmed.