AARON CALDWELL *v.* VIRGINIA·FIRE & MARINE INSURANCE
COMPANY.

*(Jackson.* April Term, 1911.)[1]

1. **INSURANCE. Agent, with authority to issue and renew the
company's printed policies, cannot orally renew an outstand-
ing policy.**

Where the insurance company's commission to its agent pro-
vided that he had been duly appointed as such agent "to issue
and countersign" its policies, with authority to renew and can-
cel them, and to assent to assignments thereof, but that such
authority was subject to the terms and conditions of the "com-
pany's printed policy," which the acts of the agent were not to
contravene, or operate to waive; and where an outstanding
policy, issued by the agent under said commission, provided
that no agent shall have power to waive any provisions or con-
ditions of the policy, except such as by its terms may be the
subject of agreement indorsed thereon or added thereto, and
any waiver must be written upon or attached to the policy,
and that it may be renewed under the original stipulations in
consideration of the premium for the renewed term; and where
it is undisputed that the entire power and authority of the
agent was contained in his said commission and said outstand-
ing policy; it was held that the only authority the agent had
under his said commission was to issue, countersign, renew
or cancel the company's printed policies and to assent to as-
signments of such policies, and that the agent had no author-
ity to make an oral contract of insurance, or renewal insur-
ance, which included the terms of the written policy · then
issued. (*Post, pp.* 597-607.)

124 Tenn.—38

Caldwell v. Insurance Co.

2. SAME. Agent's oral promise to renew certain outstanding policies at their expiration occurring in the future is only an executory contract.

A fire insurance agent's oral statement, made to the insured, that he would renew certain outstanding policies at their expiration occurring in the future, is at most only an executory agreement to renew, and not an executed contract of insurance. (*Post, pp.* 607, 608.)

3. SAME. Insured is estopped to set up an oral renewal contract of insurance made without authority and in violation of existing policy as a fraud upon the insured.

Where the insured, at the time an alleged oral contract of fire insurance was made by the agent, the insured was the holder of a policy issued by the insurer, which provided that no privilege or permission affecting the insurance should be claimed by the insured, unless written upon or attached to the policy, such insured was estopped to set up an oral contract of insurance, made, without authority, by the insurer's agent, while the written policy was in force, and identical with it as to parties, amount of indemnity, and subject-matter, because such oral contract was in fraud of the rights of the insurer under the policy. (*Post, pp.* 609, 610.)

4. SAME. No relief under allegation of an executed oral contract and proof of an executory oral contract.

The insured is not entitled to any relief where he alleged in his bill the existence of an executed oral contract of fire insurance while the proof only showed an executory contract to renew a policy; for the variance in the allegation and the proof is fatal to any relief. (*Post, pp.* 610, 611, 612.)

Case cited and approved: Pencil Co. v. Railroad, 124 Tenn., 57.

Caldwell v. Insurance Co.

5. **SPECIFIC PERFORMANCE. Remedy is controlled by what; contract must be fair, and its specific performance not oppressive.**

The remedy of specific performance is governed by the same rules which control the administration of other equitable remedies, and the contract must be fair and equitable in its terms, and the situation of the parties must be such that its specific performance will not be harsh or oppressive. (*Post, pp.* 611-615.)

Cases cited and approved: Trigg v. Read, 5 Humph., 549; Johnson v. Insurance Co., 119 Tenn., 609.

6. **MAXIMS. Seeker of equity must do equity.**
He who seeks equity must do equity. (*Post, p.* 611.)

7. **SAME. One coming into equity must come with clean hands.**
He who comes into equity must come with clean hands. (*Post, p.* 611.)

8. **SAME. Violator of conscience, good faith, or other equitable principle will be denied affirmative relief in equity.**

One who has violated conscience or good faith or some other equitable principle in his prior conduct will be denied affirmative relief in equity. (*Post, p.* 612.)

9. **SPECIFIC PERFORMANCE. Of oral executory contract of insurance whose conditions precedent to suit have been violated will be refused where oppressive to the insurer.**

Where the oral agreement to renew a policy of fire insurance, sought to be enforced as an executed contract of insurance, was made by the agent without authority or knowledge of the insurance company, and the terms of the existing policy, which the oral agreement contemplated, required the insured to submit the question of the value of his loss to arbitrators, and to give immediate written notice to the company of any loss, and provided that the company should be entitled to prorate the loss with other insuring companies, there being other insurance, and for subrogation of the rights of the insured against

Caldwell v. Insurance Co.

any person causing the loss, which rights so reserved to the company were made conditions precedent to the maintenance of any suit by the insured; and where the company was not notified of the loss until forty-two days after it occurred, it was held that the oral contract would not be specifically enforced, because its enforcement would not be fair and equitable to the company, but oppressive to it. (*Post*, *pp.* 615-617.)

Cases cited and approved: Insurance Co. v. Morton-Scott-Roberton Co., 106 Tenn., 572; Blackman v. Casualty Co., 117 Tenn., 578; Hamilton v. Insurance Co., 136 U. S., 242.

10. **INSURANCE. Notice of loss given to agent is not sufficient as notice to the company required by policy.**

Where the policy of fire insurance required notice of loss to be given to the company, notice to its agents was not sufficient. (*Post*, *pp.* 616, 617.)

Case cited and approved: Johnson v. Insurance Co., 119 Tenn., 598.

---

FROM LAKE.

---

Appeal from the Chancery Court of Lake County.— JOHN S. COOPER, Chancellor.

BURNETT & DONALDSON, for complainant.

TREZEVANT, BARTELS & TREZEVANT, for defendant.

Caldwell v. Insurance Co.

MR. JUSTICE BUCHANAN delivered the opinion of the Court.

The bill was filed November 23, 1909. It seeks to hold defendant liable on an oral contract of insurance alleged to have been made between the complainant and the agent of defendant on August 29, 1908, whereby said agent for his principal, the defendant, agreed and undertook for and in consideration of an agreed premium to write for and on behalf of his principal a contract of insurance in favor of complainant, covering a storehouse and stock of goods for a term beginning on September 9, 1908, and continuing for one year from that date, and the alternative averment appeared in the bill that at the date aforesaid, August 29, 1908, the complainant was the holder of a written policy of insurance issued by the defendant, which expired on September 9, 1908, and the oral contract sued on was in substance that this old contract of insurance upon its expiration should be renewed by the issuance of a new policy in writing whereby the complainant would be protected for an additional term of one year from the date of the expiration of the policy held by the complainant.

The bill avers that after the making of the oral contract or contracts sued on, and on or about October 26, 1908, the agent told complainant that he (complainant) was insured, and that again in the early part of November, the agent promised to bring the policy to complainant, which it had been agreed should be issued, for and on behalf of the defendant company as above set out,

and that by this conduct of the agent complainant was led to believe that the policy agreed on had been written, and that he (complainant) was fully protected by it, and that under this impression and belief the complainant rested until December 2, 1908, when his property was destroyed by fire, and it then developed that by some oversight on the part of the agent he had failed to write the new policy as agreed on aforesaid; that complainant then tendered to the agent the amount of the premium which had been agreed on between them as the consideration for the issuance of the new policy, but the agent refused to accept the premium, and that complainant then demanded the issuance and delivery of the policy as agreed on aforesaid, but this also the agent declined to do, whereupon the complainant made proof of his loss, and forwarded same to the defendant, and demanded payment from the defendant of the sum of $1,500, which was the amount for which the oral agreement, between the agent and the complainant, provided that the new policy should be written; that the above demand for payment was refused by the defendant, whereupon the complainant brought this suit.

The defenses relied on are as follows: That the agent had no authority to make the oral agreement on which the suit is based; that the making of such agreement was beyond the scope of the agent's authority; that the only authority which the agent had to act for or bind the defendant was in writing, and consisted of a written commission executed by the defendant in duplicate, one copy of which was held by the agent, and one by the de-

Caldwell v. Insurance Co.

fendant, and certain clauses of the standard contract of insurance, which was in writing, and which was the only contract of insurance that the agent had authority to issue for the defendant, after the same had been executed by the defendant; that this standard form of policy contained certain restriction upon the power of defendant's agent to bind it otherwise than in writing, and that these restrictions were by the words of the agent's commission embodied in and a part of the commission in substance and effect, and operated thereby to restrict and narrow the authority of the agent.

That no knowledge was ever brought home to the defendant either by the agent or by the complainant of the oral agreement between the agent and the complainant on which this suit is based, until after the loss of the complainant's property by fire; that the defendant never authorized in the first instance the making of the contract on which the suit is based, and never ratified the making thereof after knowledge of it came home to the defendant; that, in short, there was no meeting of minds between the complainant and the defendant in the matter of the execution of the oral agreement on which the suit is based.

The commission of the agent above referred to was as follows:

"AGENT'S COMMISSION.

"The Virginia Fire & Marine Ins. Co., Chartered by the Va. Legislature 1832, Richmond, Va., After a Century in Successful Operation, Richmond, Va., Jan. 1, 1906.

"This certifies that B. F. Le Duke (whose sign manual appears at the foot hereof in token of his acceptance of this commission on the terms hereof) residing or having a place of business in Tiptonville, Tenn., has been duly appointed agent of this company for the above town to issue and countersign its policies on property on which risks against loss and damage by fire and lighting may be accepted by him for the purpose of insurance with authority to renew or cancel such policies and to assent to assignments thereof before loss, but this authority is subject to the terms and conditions of this company's printed policy and said agent's acts hereunder are not to be in contravention thereof, or to operate as a waiver of them.

"This commission is subject to revocation by the officers or special agent of said company at will.

B. F. LE DUKE, Agent.

"In witness whereof the Pres. and Sec'y of the Va. Fire & Marine Ins. Co. have signed this certificate and affix the seal of the company at Richmond, the day above written.

WM. H. PALMER, Pres.

"W. H. MCCARTHY, Sec'y.

"Endorsed: B. F. Le Duke, Tiptonville, Tenn.

"Jan. 1st, 1906."

The clauses of the standard insurance policy issued by the defendant and relied on in its answer as matter of defense by way of restriction on the powers of the agent under the commission above set out are as follows:

Caldwell v. Insurance Co.

"This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements or conditions as may be indorsed hereon, or added hereto, and no officer, agent, or other representative of this company shall have power to waive any provisions or conditions of this policy except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions, no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance, under this policy, exist or be claimed by the insured, unless so written or attached."

"This policy may by renewal be continued under the original stipulations in consideration of premium for the renewed term."

"In any matter relating to this insurance no person, unless duly authorized in writing, shall be deemed the agent of this company."

The defendant company in its answer set up the defense that it never received any premium or a consideration from the complainant for the renewal of the policy which expired on September 9, 1908, and that there was in fact no payment by the complainant of the premium for the renewal of that policy, and that there was in fact no renewal of that policy, and that complainant is estopped in this suit by that policy, and that an oral con-

tract of insurance is not binding or valid in the State of Tennessee.

On the foregoing issues proof was taken, and on final hearing the chancellor dismissed complainant's bill, with costs, from which decree of the chancellor com-plainant has appealed to this court and assigned errors.

An important point in this case is whether or not the scope of the agent's authority was broad enough to enable him to bind the defendant by the oral agreement on which this suit is based.

The fact is undisputed in this record that the entire power and authority of the agent in this case was at date of the alleged oral contract of insurance, contained in two writings, first, the agent's commission; second, the terms of the written policy, which the company in its business issued or as stated in the commission of the agent, the "company's printed policy" the use of the words "this company's printed policy," and the word "countersigned" in the agent's commission are im-portant facts in this suit. The commission would be ambiguous but for them; however, as they are used in the commission it is clear that the agent's authority, and his only authority at the date of the making of the al-leged oral contract on which this suit is based, was as follows:

First. To issue the company's printed policy.

Second. To countersign the company's printed policy (and by way of parenthesis it is difficult to see how the agent could countersign any but a printed or written policy).

Third.   To accept risks for purposes of insurance to be covered by the company's printed policy.

Fourth.   To renew the company's printed policy.

Fifth.   To cancel the company's printed policy.

Sixth.   To assent to assignments of the company's printed policy before loss.

But all of the above authority vested in the agent is by the express terms of the commission made subject to the terms and conditions of the company's printed policy, and the agent's acts under the commission are not to be in contravention of the terms and conditions of the company's printed policy, nor are the acts of the agent to operate under the commission as a waiver of the terms and conditions of the company's printed policy.

All of the terms and conditions of the printed policy of the company which have been hereinbefore set out, and need not be here repeated, are in substance and effect that whatever may be done by the agent relative to insurance must be done by writing indorsed upon the particular policy which is the evidence of the contract of insurance.

There is no evidence in this record showing, or tending to show, that the defendant prior to the making of the contract sued on expressly or by implication broadened the powers of the agent, nor is there any evidence showing, or tending to show, that after the making of the contract sued on the defendant ever ratified the same.   It is therefore clear that in the making of the contract sued on, the act of the agent was wholly outside

of the scope of his authority and did not bind his principal.

We do not find in this record any evidence of conduct on the part of the defendant which should in equity and in good conscience be held to estop it from relying on the lack of authority in the agent to bind it by the contract on which this suit is based. On the contrary there is in the record affirmative proof that the defendant had no knowledge of any matter which should estop it from showing the truth.

Mr. Roger W. Cooley in his Briefs on Insurance, vol. 1, p. 345, lays down as a general rule "that the powers of an agent are *prima facie* coextensive with the business intrusted to his care, and will not be narrowed by limitations not communicated to the person with whom he deals, and that in such cases the real question is not what power the agent has, but what power the company has held him out as having."

And a large number of authorities are referred to by the author in support of this doctrine, but there is no evidence in this record to the effect that the agent was ever held out by the defendant to the complainant, or to any one else as having power to bind the defendant by an oral contract to insure or to renew existing insurance. On the contrary there is evidence in the record that the agent was not so held out by the company.

Moreover in this case there is no evidence that the complainant was ignorant of the limitations on the power of the agent. The complainant does testify that

Caldwell v. Insurance Co.

the agent had said to him, relative to insurance at different times, "You are insured from this time," or the like, and that the agent would thereafter deliver to complainant a policy covering the particular contract of insurance referred to in the remark of the agent; but there is affirmative evidence in the record that the defendant had no knowledge that such dealings between complainant and the agent had ever occurred, and there is affirmative evidence in the record that the defendant never authorized or ratified transactions of that character. There is also evidence in the record that complainant had, prior to the date of the oral agreement sued on, and in respect of another policy, requested the agent to indorse his signature as agent on said other policy, consenting to its assignment. This indicates clearly that complainant understood that to bind the company the acts of the agent must be in writing, and further indicating this same knowledge, the evidence shows that complainant repeatedly asked the agent to bring to him, the complainant, the identical policy which he claimed was to be issued under the oral agreement sued on, and complainant admitted on cross-examination, that he did not know of a single instance in which B. F. Le Duke as agent for defendant had consented to a change in location, use or other matter pertaining to insurance without expressing that consent in writing on the policy.

It further appears from the record that complainant's place of business was only removed about the distance of one city block from the office of the agent; that each

of them resided in the town of Tiptonville, a place having a white population of about six hundred or seven hundred people; that the agent was a customer of the complainant's mercantile establishment buying therefrom his, the agent's, family supplies, and that the opportunities for communication between the complainant and the agent were of almost daily occurrence.

The complainant admits that he never had any communication with the defendant relative to this oral contract on which he sued, that he never communicated to the company the substance of this contract, or any other matter in relation thereto until after the destruction of his property by fire which occurred on December 2, 1908. The notice, and the first and only notice, which the defendant company ever had from this complainant of his claim that the defendant was an insurer of the property at the time of the fire, was by means of a proof of loss sworn to and subscribed by the complainant on the 13th day of January, 1909, although complainant must have known that, so far as he was concerned at least, the company had do notice from him of the contract sued on. He testifies on cross-examination that he did not look to or rely upon the agent to renew the policy of insurance, but looked to the company to do so; that he did not look to the agent individually; that he did not depend on the agent to renew the policy, but depended upon the company the agent represented. This was on cross-examination. On re-examination he stated that he depended on B. F. Le Duke, as agent of the defendant and other companies, to renew three policies.

On his direct examination the complainant detailed the conversation which occurred between himself and the agent on August 29, 1908, constituting the oral contract sued on, as follows:

"Question. Now please state in your own way how said conversation or agreement took place, and state the substance of the same just as it occurred?

"Answer. I called him up to my office and told him that I was going off within a day or two and would be absent from home for two or three weeks, and as I had looked over my memorandum, I find that there are three policies which would expire; two of them on September 6th, which were the Philadelphia Underwriters, $3,000, and Continental, on the same date, for $1,000. Also on the 9th, one in the Virginia Fire & Marine Insurance Company, for $1,500. I told him I wanted him to renew these three policies with the same companies for the same amounts for another term of twelve months. He then said, 'You know the rate is a little higher. It is ten cents on the thousand higher;' and I told him that I knew the rate was a little higher, and that I wanted him to be sure and renew these three policies. He then said he would, and wouldn't lose any time on the same; that the policies would be renewed.

"Question 44. According to said agreement you speak of, were the policies to be renewed at their expiration or at some future time?

"Answer. Right at their expiration."

The foregoing statement certainly does not make out a

contract of present insurance, even if the agent had been clothed with authority to execute an oral contract of insurance. The above quoted evidence would not be sufficient to amount to an executed contract of insurance. It would amount to nothing more in law than an executory agreement to renew an existing policy of insurance upon its expiration at a future date.

The complainant did not call the insurance agent as a witness to confirm his evidence although the record shows by the clearest inference that the relations between them were friendly and of long standing, and this failure is not explained in the record, nor is it explained why the agent was not called by the company. The failure of the latter to call the agent as a witness may be accounted for on the theory that the burden of proof was on the complainant, but it is difficult to account for the failure of complainant to call this witness, whose testimony if corroborative of his own, would have added much to its weight.

The complainant testified further as follows:

"The morning after the fire, which occurred about midnight of December 2d, I went to Mr. Le Duke's office to get my three policies which he had agreed to renew and asked him for them. He looked through his papers, and handed me two policies; one in the Continental and one in the Philadelphia Underwriters. I asked him for the policy in Virginia Fire & Marine Company for $1,500. He said, 'Yes, that's right, let me see,' and looked over his insurance register. He looked up puzzled

like and said, 'Well, what do you think, Aaron, I overlooked that Virginia policy, and failed to register it. I don't know how that happened. I don't know what caused me to do that. I was sure that I had renewed that policy.' That is what he said, or that in substance. I thereupon demanded my Virginia policy according to the agreement he had made with me. He said, 'I don't know what to do.' He finally said he would not issue me a policy, but said he would notify the company of the loss and of the facts."

The substance and effect of the estoppel set up in the defendant's answer is that on August 29, 1908, the date of the alleged oral contract sued on, the complainant was the holder of a policy of insurance issued by the defendant, which expired September 9, 1908, in which policy there was the stipulation, hereinbefore set out, precluding complainant from claiming any privilege or permission affecting the insurance under that policy, unless the privilege or permission should be written on the policy or attached in writing to the policy, that of this stipulation in the policy, by which he was bound, the complainant had notice carried home to him that only by writing indorsed on the policy could it be renewed, and that an oral agreement to renew it was in fraud of the rights of the defendant and therefore that complainant is estopped to set up the oral contract made in fraud of the defendant's rights.

We think this equitable estoppel set up as a matter of defense in the answer is good against the complainant.

We know it may be said that the oral contract contemplated the execution of a new printed or written evidence of the contract of insurance beginning at the instant of the expiration of the old evidence or policy, and that each of these evidences constitute in and of themselves different contracts, but the answer to this suggestion is that the parties, the amount of indemnity, and the subject-matter or property, and the cause of the loss, contemplated by the oral contract were the same as in the printed policy on which the estoppel is said to arise.

The insurance or risk was the subject-matter—the property right protected on both sides under the printed contract in force at the date of the alleged making of the oral contract sued on. Under that printed contract two of the mutual covenants were as follows: The insurer said, I will pay your loss if your property burns before a time certain. The insured said, You have delivered to me your printed policy to pay my loss if my property burns before a time certain, in consideration of which protection I agree not to set up any claim for indemnity against you, except it be in writing signed by you or your agent, if my property, the subject of the present insurance, is burned after the date fixed in your printed policy as the limit of your liability.

These are mutual covenants dependent one upon the other. If the first is binding upon the insurer, the last must be equally binding upon the insured. Especially is this true in an equitable forum, for we must not lose sight of the fact that although the complainant alleged

Caldwell v. Insurance Co.

in his bill an executed contract as of date August 29, 1908, and prayed for a decree for damages as for a breach of that contract, yet his proof wholly fails to show any executed contract of insurance, and so under the doctrine *secundum allegata et probata* he may not expect this court to administer the legal right, which he averred in his bill, but did not prove. *Am. Lead Pencil Co. v. N. C. & St. L. Ry. Co.*, 124 Tenn., 57, 134 S. W., 613, and other authorities there cited.

His hope of relief therefore depends upon his right to the equitable remedy of specific performance. He cannot in a court of equity expect a decree for damages for the breach of a contract of which the court of equity under its peculiar principles would refuse to decree the specific performance. His proof only shows an oral agreement of date August 29, 1908, to renew a policy then existing when it should expire on a future date, and he is now saying in this forum by the alternative prayer of his bill "decree for me a specific performance of this oral contract, I am entitled to it *ex equo et bono.*" Is he so entitled? Is he not bound by the estoppel, and otherwise disentitled? The remedy of specific performance is governed by the same rules which control the administration of other equitable remedies; the right to it depends upon elements, conditions and instances, which equity regards as essential to its peculiar modes of relief. He who seeks equity must do equity, and he who comes into equity must come with clean hands. The contract must be perfectly fair, equal, and just in its

terms and in its circumstances. The contract and situation of the parties must be. such that the remedy of specific performance will not be harsh or oppressive. Pomeroy, Eq. Jur., vol. 3, sections 1404, 1405.

Whenever a party, who as an actor seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience or good faith or some other equitable principle in his prior conduct, then the doors of the court will shut against him *in limine,* the court will refuse to interfere on his behalf to acknowledge his right, or to award him any remedy. Pomeroy, Eq. Jur., vol. 1, section 398.

Under the statutory jurisdiction of this court to administer legal remedies many of the cases relied on by complainant might have been of weight here if the proof had sustained the averment of the bill that the contract sued on was an executed contract, but shorn, as this case now is, of any semblance of legal right in complainant to the execution of a legal remedy, the application of authorities is narrowed to those cases involving the application of the equitable doctine of specific performance of contract.

The complainant averred his legal right, but failed to prove it, and averred in the alternative an executory oral contract, and thereupon invoked the equitable doctrine of specific performance, and must be held to abide the equitable rules which govern that branch of the jurisdiction of this court.

In *Trigg* v. *Read,* 5 Humph., 549, this court, speaking

through Judge Turley, quoted as follows from Mr. Story:

"Mr. Story, in speaking of the power of a court of chancery to rescind, cancel, or direct a surrender of contracts, securities or deeds, or to enforce them by a specific performance (section 693) says: 'The application to a court of equity for either of the purposes is not strictly speaking a matter of absolute right, upon which the court is bound to pass a final decree, but it is a matter of sound discretion, to be exercised by the court, either in granting or refusing the relief prayed, according to its own notion of what is reasonable and proper under all the circumstances of the peculiar case. Thus, for instance, a court of chancery will sometimes refuse to decree a specific performance of an agreement, which it will yet decline to order to be delivered up, canceled or rescinded. On the other hand, a specific performance will be decreed upon the application of one party when it would be denied upon the application of the other. And an agreement will be rescinded or canceled upon the application of one party, when the court would decline any interference at the instance of the other. So that we are to understand that the interference of a court of equity is a matter of mere discretion, not, indeed, of arbitrary and capricious discretion, but of sound and reasonable discretion—*secundum arbitrium boni judicis.*' 17 Ves., 167; 18 Ves., 335; 16 Ves., 305; 18 Ves., 12; 3 Atk., 188; 18 Ves., 111."

And in the same opinion occurs the following quotation from Mr. Story:

"Mr. Story in commenting on the legal principle that if one party has actual knowledge of an event or fact from private sources not then known to the other party from whom he purchases, and which knowledge would materially enhance the value of the thing purchased, or change the intention of the party as to the sale, the contract of the sale will nevertheless be valid, observes: 'There are many duties that belong to the class of imperfect obligations which are binding on conscience, by which human laws do not, and cannot, undertake directly to enforce. But, when the act of a court of chancery is sought to carry into execution such a contract, then the principles of ethics have a more extensive sway. And a purchase made with such reservation of superior knowledge would be of too sharp a character to be aided and enforced by a court of chancery. It is a rule in equity that all the material facts must be known to both parties to render the agreement fair and just in all its parts; and it is against all the principles of equity that one party, knowing a material ingredient in an agreement, should be permitted to suppress it, and still call for a specific performance.' Story's Eq. Jur., section 206; 2 Kent, Com. (2 Ed.), section 49, pp. 490, 491; *Parker* v. *Grant*, 1 Johns. Ch., 630; *Ellord* v. *Landoff*, 1 B. & B., 230, 231."

Our cases in great number abound in applications of the fundamental principles above quoted. Applying these principles to the case at bar, is the oral agreement sought to be enforced fair, equal, and just as between the

complainant and defendant?   We hold it is not.   The agent had no authority to make it.   It has been held by this court that an executory agreement between the agent and the insured to the effect that the insurance policy would be valid notwithstanding the vacancy of the premises was one beyond the power of the agent to make where the policy contained a clause invalidating the insurance if the premises should be vacant.   This court, speaking through Mr. Justice Neil, said:

"To give legal effect to such executory agreement in contravention of the plain terms of the written instrument would be to set aside well-settled and important rules of law."

In support of which the opinion cited a large number of authorities.   *Johnson* v. *Insurance Co.*, 119 Tenn., 609, 107 S. W., 688.

The same reasoning underlying the conclusion of this court in the case last above cited exists here.   The defendant had given the agent no written or verbal power or authority to make the oral contract.   It was made clearly in violation of the agent's commission, and of a written contract then existing between complainant and the defendant.   It was founded on no consideration moving to defendant.   It was made without the knowledge of the defendant.   If defendant had known of its existence prior to the fire, it could have repudiated the contract and thus avoided all loss.   This is true under the policies issued by the defendant even if the consideration passed to the defendant at the time of the issuance of the policy.

Under the terms of the contract, which the oral agreement contemplated, the complainant was bound in the event of loss to submit the question of sound value of his loss and damage to arbitrators for an award in the premises, and he was likewise bound in case of loss to give immediate notice thereof to defendant in writing, and he was likewise bound to perform other covenants looking to an exact estimate of the loss sustained in the interest and further protection of the defendant. The latter, under the policy, was entitled to proration with other insurers in case of loss, and the record shows that there were other insurers of the property. The defendant was also entitled under the policy to subrogation to the rights of the insured in the event of the loss caused by the negligence of any other person.

All of these rights of the defendant under the policy contemplated by the oral agreement were by the terms of that policy made conditions precedent to the maintenance by complainant of any suit or right of action in law or equity. Such conditions precedent have been held valid, and where not performed to operate as a bar to an action on the policy. *Hamilton* v. *Liverpool, London & Globe Ins. Co.*, 136 U. S., 242, 10 Sup. Ct., 945, 34 L. Ed., 419, and *Insurance Co.* v. *Morton-Scott-Robertson Co.*, 106 Tenn., 572, 61 S. W., 787.

The defendant never received immediate notice of the loss. It was forty-two days after the loss before defendant was notified thereof.

Notice to defendant's agent, if such was given, was not

sufficient.   1 Clement on Ins. Co., p. 9; *Johnson* v. *Insurance Co.,* 119 Tenn., 598, 107 S. W., 688.

There is no pretense in the record that the complainant has ever complied with the other conditions precedent to his right of action on the policy contemplated by the oral agreement.

This court has held that a requirement to give ten days' notice of an injury or accident under an insurance contract is a reasonable requirement, and, in the absence of a valid excuse, that failure to give such notice within the designated time operates to defeat a recovery. *Blackman* v. *Casualty Co.,* 117 Tenn., 578, 103 S. W., 784.

We have examined the authorities submitted by the complainant for our consideration.   The cases they present are easily distinguishable from the principles which control this case.   Upon a full and careful review of the law and the facts, we are fully satisfied without further elaboration that the complainant was and is not entitled to the relief prayed for in this cause, and the decree of the chancellor is therefore affirmed.