I. P. WEST, et al. v. AETNA INSURANCE CO., et al.

Western Section. January 10, 1930.

Petition for Certiorari denied by Supreme Court, April 5, 1930.

Craig & Durham, of Ripley, for appellants.

R. Lee Bartels, of Memphis, R. W. Sanford, of Covington, and E. C. Bullock, of Ripley, for appellees.

OWEN, J.  The complainants, I. P. West, E. M. Rice and W. G. L. Rice, citizens of Lauderdale county have appealed from a decree of the chancery court of said county wherein their bill was dismissed. The bill in the instant case was filed September 25, 1928.  It sought to recover a judgment for $800 against the Aetna Insurance Company, F. A. Henry & Company, a partnership composed of F. A. Henry and Frederick Henry, citizens of Lauderdale county, and S. N. Anthony, a citizen of said county.  The Aetna Insurance Company's principal office is in Hartford, Connecticut, but it is qualified to do business in Tennessee.  It was alleged that Henry & Company were the agents of said Insurance Company.

The bill sought to recover eight hundred dollars which the complainants alleged were due from the defendants by reason of insurance that the complainants had on 920 bales of hay, which hay was destroyed by fire on October 31, 1927.  This hay at the time of the fire and its destruction was located in a barn near the southern cor-

porate limits of the town of Ripley and the barn was on a farm owned by E. M. and W. G. L. Rice. It appears that the complainant West owned a half interest in the hay, he being a tenant and E. M. and W. G. L. Rice, the owners of the barn and farm worked by West owned the other undivided half interest. The barn burned on Monday night. On Saturday, October 29, 1927, two days prior to the destruction of the barn it appears that West reported to Mr. E. M. Rice that the hay had been baled and stored in the barn. Mr. E. M. Rice suggested to West that he (West) see W. G. L. Rice and that they procure some insurance on this hay. It appears that W. G. L. Rice has an office on the south side of the Square in Ripley, on the second floor of a building that was owned by Mr. Rice, and on the same floor the defendant S. N. Anthony has an insurance office adjoining or near the office of W. G. L. Rice. Mr. Anthony shares his office with his father A. S. Anthony who is also in the insurance business. Mr. Rice called Mr. Anthony and asked him (Anthony) to write the insurance on the hay. Anthony informed them that he could not write insurance on hay with any of his companies, but would see if he could procure some agent to write it. Rice stated in substance that he would see what he (Rice) could do. Thereupon Mr. Rice requested Mr. Neville, an insurance agent, to protect the hay. Neville replied that his companies would not insure the hay. Thereupon Mr. Rice went from his office to the office of the defendant Anthony and suggested that he see if he could procure the insurance. Anthony went to the courthouse and interviewed Mr. A. O. Durham, who is Clerk and Master and also engaged in writing insurance. Mr. Durham informed Anthony that he could not protect the hay. From the courthouse Mr. Anthony went to the west side of the Square and was on his way to the office of F. A. Henry & Company, who have an office on the second floor of a two story building on the west side of the Square, but before reaching this office or going up the steps he saw the defendant Frederick Henry in conversation with a gentleman. Anthony asked Henry if he could write insurance on the hay for Mr. Rice, and it is the conversation that occurred between Anthony and Henry on the street west of the Square Saturday, October 29, 1927, about noon, that brought about this lawsuit.

After the fire Henry & Company claimed that no insurance was written and that there was no liability. The bill, in substance, charges as follows: Anthony promised and agreed to place the said insurance for complainants and F. A. Henry & Company agreed to insure said hay in the Aetna Insurance Company and did insure same in

that company and bind the company for the loss; that F. A. Henry & Company, as agents of the Aetna Insurance Company, had authority to write fire insurance and to make preliminary contracts of insurance and by express authority and by custom of dealing for said company with the public had power to take applications for insurance and make preliminary contracts of insurance until the policy could be written and by custom of dealing with the public and under their authority, express and implied, had authority to take applications, bind the company until the policy is written and delivered or until notice not to be bound is given to the applicant or insured; that if F. A. Henry & Company did not issue said policy they breached their contract and same was a breach of contract within the scope of their authority as agents of the Aetna Insurance Company for which they and the Aetna Insurance Company are liable; that complainants are led to and did rely upon the representations of defendants that insurance would be procured for complainants and that they were protected against loss from fire and relying upon same complainants suffered loss for which the defendants are liable; that if F. A. Henry & Company did not issue said policy or bind said company for said loss, then F. A. Henry & Company breached its contract with complainants and S. N. Anthony breached his contract with complainants to procure said insurance and they are both liable to the extent of the loss on that account, to-wit: eight hundred dollars; that if Anthony did not procure said insurance he failed to carry out his contract and rendered himself liable; that it is the custom and practice among insurance agents in Ripley and between Anthony and Henry to procure insurance for each other and to receive part of the premium for their services and that said F. A. Henry & Company and Anthony were acting as agents and brokers in agreement to procure said insurance, and that if said insurance was not procured and complainants protected it was due to the fault and negligence of said Anthony and Henry, for which they are liable in the sum of eight hundred dollars as complainants relied upon same and suffered a loss as a result.

The prayer of the bill was for a judgment against the Aetna Insurance Company, in the first place, and that the court decree that complainants were insured against loss by fire in said insurance company in the sum of eight hundred dollars; but if complainants be mistaken in their right to that relief, that the court decree a specific performance of said contract of insurance and judgment be rendered against said insurance company; that if complainants be mistaken in their right to that relief, that judgment be rendered

against the Aetna Insurance Company and F. A. Henry & Company; that if complainants be mistaken in their right to that relief, that judgment be rendered against S. N. Anthony.

The Insurance Company answered and admitted that F. A. Henry is the agent of the Aetna Insurance Company, and that he was doing the business under the trade name of F. A. Henry & Company, and that Frederick Henry was not an agent for the Aetna Insurance Company. It denied that F. A. Henry & Company as its agents had authority to write fire insurance upon the character of risk that the complainants had and for which claim is made. It is also insisted that the oral contract of insurance, such as set out in the complainants' bill, is invalid. F. A. Henry & Company denied that they had ever agreed to procure any insurance for the complainants, but that Frederick Henry stated to his co-defendant Anthony that he would write to the special agent of the Insurance Company at Nashville and see if insurance could be obtained on hay, and if so an application would be taken and forwarded. The answer of Anthony denies all of the material allegations of the bill, and it is insisted that the only connection he had was a gratuitous one; that he was trying to favor Mr. Rice and that he reported to Mr. Rice the facts as he had gathered them from Mr. Henry.

The complainants' depositions were taken and also the defendants. Mr. Felix Ray, special agent of the Aetna Insurance Company at Nashville, testified for the company. This constituted the proof. A number of exhibits were filed to the various depositions. Upon the hearing the Chancellor dismissed the bill as to all the parties. There were some exceptions to certain questions and answers by various witnesses, and the rulings of the court in overruling or sustaining these exceptions were preserved by bill of exceptions. The complainants also at the hearing sought to amend their bill, which amendment was disallowed on the ground that the amendment does not change the averments of the original bill. This amendment offered and disallowed was preserved by bill of exceptions.

The complainants excepted to the decree of the Chancellor, prayed and perfected an appeal, and have assigned errors, as follows: First: The Chancellor erred in dismissing the bill; second, the Chancellor erred in the following holdings in his memorandum; then this assignment is followed by the Chancellor's findings or memorandum opinion. Third: The Chancellor erred in admitting testimony of F. A. Henry, Frederick Henry and Felix Ray, which undertook to state the authority of F. A. Henry & Company was limited and that hay could not be written except on written application, and to the testimony of Frederick Henry and Felix Ray as to certain

letters that passed between them, to-wit: the letter of October 29th written by Henry to Ray and the copy of same.

There was exception to certain letters written by complainant W. G. L. Rice to Special Agent Felix Ray; exception to the testimony of the defendants Henry and Anthony that they were not brokers, and the testimony of Anthony that he was acting as a matter of accommodation and courtesy, and the testimony of Frederick Henry as to what he told about his opinion, which opinion was that his company would not write the insurance on the hay.

The fourth assignment goes to the action of the court in excluding the testimony of West and the testimony of E. M. Rice, which purported to be a conversation between Henry and Anthony, and the testimony of W. G. L. Rice relative to conversations he had with S. N. Anthony. This testimony of the Messrs. Rice and West related to certain conversations they had with the defendant Anthony and was excluded so far as Henry was concerned, as said conversations were not had in the presence of the defendant Henry.

The fifth assignment is, the court erred in not allowing the complainants to amend their bill as set out in the bill of exceptions.

We have examined the amendment offered and it does not change or alter, in our opinion, the status of the parties as made in the original bill, and was only a reiteration of the charges contained and averred in the original bill and sought the same relief with reference to said parties, and in the same manner. The complainants are not injured or prejudiced by the action of the Chancellor in disallowing this amendment.

As to the third and fourth assignments, we are of opinion that the court properly excluded the evidence complained of so far as it related to the defendant Henry or to the Insurance Company represented by Henry. It was conversations between the complainant and the defendant Anthony.

As to the complaint of the evidence that was allowed, all of this was competent and material, in our opinion, except the letter from W. G. L. Rice to the Special Agent Ray, in which he offered to accept $600 in settlement of his claim; but the complainants are not injured by the admission of this letter.

As to the second assignment, it is simply a memorandum of the Chancellor in giving his conclusions or reasons for dismissing complainant's bill. This will be disposed of with the first assignment, and that is, was the bill properly dismissed.

We find that the Aetna Insurance Company was represented at Ripley, Tennessee, by F. A. Henry & Company, a trade name for F. A. Henry. Mr. Henry had been an insurance agent for many years. His son and co-defendant Frederick Henry is employed by

F. A. Henry and works for F. A. Henry & Company in the insur-ance business. F. A. Henry & Company are recording agents; that is, their office is supplied with policies which said agents can fill out, counter-sign and deliver for a certain premium, upon city and village property in Lauderdale county. F. A. Henry & Company do not counter-sign policies that will insure farm property or farm products, such as hay, but in regard to such property, Henry & Company's authority was limited to having the applicants sign a written application, which application was sent direct to the Com-pany, and if accepted by the Company a policy was issued by the Company and returned to the agent for delivery to the insured. As to farm property and farm products, F. A. Henry was a soliciting agent for the defendant Aetna Insurance Company and had no authority to make contracts for insurance upon farm property. He merely solicited the insurance, took the application and forwarded it to the Chicago office for approval or rejection.

It appears that insurance companies, and especially the defend-ant company as a rule do not insure hay specifically in insuring farm property. They will not insure farm products without at the same time insuring the barn or farm hourses, with the exception it ap-pears that cotton when ginned and baled does not come under this general rule.

There is no evidence that F. A. Henry & Company ever assumed the authority to write insurance upon farm products, except cotton, without submitting an application to the defendant company, unless it be held that they did so in the instant case. There is no evidence to show a course of dealing on the part of F. A. Henry & Company that could be implied that F. A. Henry & Company had such au-thority.

In Caldwell v. Insurance Co., 124 Tenn., 593, 139 S. W. 698, it was held:

"That the powers of an agent are prima-facie coextensive with the business intrusted to his care, and will not be narrowed by limita-tions not communicated to the person with whom he deals, and that in such cases the real question is not what power the agent has, but what power the company has held him out as having.

"And a large number of authorities are referred to by the author (Cooley) in support of this doctrine, but there is no evidence in this record to the effect that the agent was ever held out by the defendant to the complainant, or to anyone else, as having power to bind the defendant by an oral contract to insure . . . On the contrary, there is evidence in the record that the agent was not so held out by the company."

In Duluth Bank v. Knoxville Fire Insurance Co., 85 Tenn., p. 76, Vol. 1 S. W., p. 614, opinion by Mr. Justice Lurton, the following was announced:

"If she is to be regarded as the agent of the Knoxville Fire Insurance Company in any legal sense, her agency was limited and special, and would be confined to receiving and forwarding of applications for insurance, the receiving and delivery of the signed and completed policies, and the collection of premiums for insurance. She certainly was not a general agent for the defendant company . . . .

"We then have the case of an agent of the insurance company with power and authority to deliver to the insured the policy, and to receive for the company the premium. Has such an agent the power, or is such authority within the apparent scope of her power, to bind the insurer by subsequently altering the contract so as to insert a clause binding the company to pay the loss to one other than the insured? The power to change and alter a contract is as high a power as to make a contract. . . .

"The burden is upon the assured to show the act relied upon to be within the scope of the apparent authority of the agent doing it. The law makes no presumption as to the powers of an agent. His authority must be shown, and what the agent has done for the principal, which had been ratified by him, is competent proof . . . as to the power of an agent.

"This record discloses no previous effort of Mrs. Smith to bind the company . . . and the record contains no facts or circumstances which would justify the assumption that she had the authority claimed."

"An agent whose powers are limited to receiving and forwarding applications for insurance, cannot make a contract binding upon the company." Cooley's Briefs on Ins., Vol. 1, p. 469.

We therefore hold that under the proof the defendant Insurance Company is not liable.

As to what occurred between Mr. S. N. Anthony and Mr. Frederick Henry, there is a sharp conflict. Mr. Anthony's version is as follows: "I met Frederick Henry on the street, pretty close to the Farmers Union Bank, in conversation with Mr. Max Durham. I interrupted this conversation and asked Mr. Henry if he could write some hay for Mr. Rice; he asked me where this hay was located, about how much hay it was, and how much insurance he desired on it. I told him where the hay was located, about how much hay there was I thought, and that Messrs. Rice wished about $800 insurance on it. He said, 'yes, I think I can write it.' I said 'Well, Ted, don't think what you can do, we are dealing with W. G. L. Rice and you

had better know what you can do. Can you write it?' He said, 'Yes, I will write it.' ''

Mr. Anthony was asked the following questions: "Q. Was there anything said about a reference of the proposition to the company at all? A. I do not remember any reference to the company whatsoever." Mr. Anthony testified that after he left Mr. Henry he went back to his office and found Mr. W. G. L. Rice in the office talking to the witness' father, A. S. Anthony: "I said, 'Mr. Rice, Ted said he would write the hay for you, you had better tell him how you want it written,—who to. He (Rice) said 'call him up and tell him to write it to Montello and myself'—meaning Mr. E. M. Rice and Mr. W. G. L. Rice. I called Mr. Henry over the 'phone and told him what Mr. Rice said, and he (Henry) said 'all right.' ''

Mr. Henry, upon being asked to state what Mr. Anthony said to him and he to Mr. Anthony, with reference to the question, answered as follows: "He (Anthony) asked me if I could write eight hundred dollars insurance on hay for Mr. W. G. L. Rice and Mr. E. M. Rice. I told him that it was not customary, that the Aetna Insurance Company would not write hay specifically where it did not have a line on the buildings and other personal property, but that I would take it up with the special agent and see if he would agree to pass on it, and if he would I would then take an application from Messrs. W. G. L. Rice and E. M. Rice and then forward it to the Home Office so that they could issue policy. Q. Did you on that occasion or on any other occasion, in regard to a policy on the hay in question, say to him, yes I think I can write it, or say to him, yes, I will write it? A. No. Q. Did you in a 'phone conversation with Mr. Anthony, in reply to his saying to you that Mr. Rice said to write the hay in his name and Montello's, reply all right? A. I just don't remember. Q. Do you remember whether you replied alright that you would write the policy? A. I did not reply alright that I would write the policy, but when he told me how same should be written, that I told him that I would state who it was to be written for in my letter which I would write the special agent about it. Q. Did you at any time for yourself or your father, or for F. A. Henry & Company or for Aetna Fire Insurance Company or any other fire insurance company agree to write a fire insurance policy on this hay? A. No. Q. Did you intend to give that impression to Mr. Anthony or anybody else? A. No, sir.''

The witness was asked if he wrote a letter to the special agent and he answered that he wrote a letter the same day and within an hour, or less, after the conversation. The letter which was written is as follows:

"WESTERN DEPARTMENT
"AETNA INSURANCE COMPANY
"8th & 9th Floors No. 410
"North Michigan Avenue,
"Chicago, Ill.

"F. A. Henry & Co.                                    Ripley, Tenn.
"Agents                                              Oct. 29, 1927.
"Ripley, Tenn.
"Mr. Felix C. Ray, S/A.,
"Nashville, Tenn.

                    Re—W. G. L. & Montelle Rice.

"Dear Sir,

"The above parties called on us this afternoon requesting Eight Hundred Dollars ($800) coverage on hay located on their farm about one mile south of Ripley, but as the writer knows that it is not customary for the Aetna to write hay specifically where they do not have the other lines on a risk I thought it best to write you in regard to same before taking application as I told them that I would try and place this for them. I have known both of these parties all my life and know them to be absolutely reliable, and if this had not been the case I would never have written you in regard to it. Please advise us right away in regard to the matter as we want to let them know as soon as possible whether we can handle same for them or not. With best regards, we beg to remain Yours very truly, F. A. Henry & Co. By—F. Henry."

It appears that Mr. Felix Ray, Special Agent, replied to the letter of Henry & Company on October 31, declining to write insurance on the hay of Messrs. Rice. Henry & Company received Ray's letter declining to write the insurance on November 1, which would be Tuesday the day following the fire.

It appears that the defendants Frederick Henry and S. N. Anthony are young men, active in business, bearing good reputations so far as the record shows; that they had this conversation on a busy Saturday on the public square in Ripley, at a busy season of the year. The depositions were taken on the 7th of May, 1929, more than eighteen months after the conversations. No doubt each one is trying to relate the truth of the matter, and as each understood what was said and done.

We do not think that the minds of these two young men ever met to a full understanding. Anthony was out trying to help his friend Mr. Rice insure the hay. Mr. Henry wanted to help both Mr. Rice and Mr. Anthony, but Henry certainly knew that he could not obligate the defendant company then and there. He was an experienced

insurance man and he well knew that the company had never written a policy on hay without an application. When it came to writing hay the quickest way to find out was by writing the special agent whether it would be advisable to forward an application. The letter that was written corroborates Henry as to his understanding. Doubtless Mr. Anthony was of the opinion that Henry was going to write a policy on the hay and from a misunderstanding of what was said Mr. Anthony honestly but erroneously reached the wrong conclusion and informed Mr. Rice as to something that had not happened. However, regardless of what was said and done there is another barrier to complainant's recovery against Henry & Company for the reason they allege that Henry & Company were acting within the scope of their authority in agreeing to insure and insuring complainant's property in the Aetna Insurance Company and that therefore the Insurance Company is bound. The complainants cannot recover upon an opposite and contradictory theory insisting that they should be allowed to recover against the agents for making the contract beyond the scope of authority; but we hold that this is immaterial because there was no contract of insurance. The complainants have failed, as was held by the Chancellor, to carry the burden of proof. We cannot say from the evidence that the conversation and agreements occurred as stated by Mr. Anthony. We think that he became confused and did not fully understand what was said and he reached the conclusion erroneously. He simply was mistaken. We are satisfied that every witness who testified in this law suit endeavored to tell the truth as he fully understood it.

As to the defendant Anthony, we find that he was not acting as an insurance broker; he was simply trying to do a friendly and gratuitous act for Mr. Rice. No doubt he thought he procured the insurance. He made a mistake; but we do not think that the complainants are entitled to recover against the defendant Anthony because the complainants state that Anthony did all that he agreed to do; and for another reason,—by the failure of the complainants to procure the insurance and Anthony's erroneous conclusion the complainants, had they discovered the error have not shown that they could have procured insurance elsewhere. It appears that the Aetna Insurance Company was the only one represented at Ripley that would write farm products and this only when an application was made and passed on by the special agent or the home office. Complainant W. G. L. Rice thinks that he could have procured insurance elsewhere, but that is a mere conclusion or an afterthought. It appears that all of the agents, representing numerous companies at Ripley, had been canvassed to insure this hay, and that hay is hard to insure, unless the barn or building in which it is stored is insured in conjunction therewith. Evidently Mr. Rice did not want insurance on his barn, and there is no proof that there was any company

within the knowledge of the complainants who would insure this hay without the complainant's first making application and having it sent in to the home office of such insurance company. If an application had been made in another insurance company on Saturday, the 29th, it is reasonable to assert that no policy would have issued prior to the fire and loss.

It is insisted by the defendant insurance company that complainants cannot sustain this action because complainant West, who owned one-half of the hay destroyed was not mentioned as an owner to Mr. Frederick Henry, and that Messrs. W. G. L. Rice and E. M. Rice were not the sole and unconditional owners of the hay, citing Cooley's Briefs on Insurance, Vol. 1, pp. 556, 557, C. J., Vol. 26, p. 50.

Complainants insist that the rule is well settled that it is not necessary to support an insurance policy, that the party suing should charge an interest, legal or equitable, in the property destroyed. It is enough if he is so situated with reference to it that he would be liable to loss if it was destroyed or injured by the peril insured against. Citing 14 R. C. L., 910, and Berry v. American Central Insurance Co. (N. Y.), 28 A. S. R., 552.

It is not necessary for this court to pass on the question of ownership for the reason we concur with the Chancellor in holding that under the facts no contract of insurance was ever made, and there being no contract of insurance, it becomes immaterial as to who owned the hay destroyed, or whether two of the owners of an undivided interest could procure insurance on all of the hay.

We are of opinion that the right conclusion and the equities and justice of this lawsuit have been reached by the Chancellor. All of the assignments are overruled and disallowed, and the decree of the lower court is in all things affirmed. The complainants and their sureties on appeal bond will pay the cost of the cause, including the cost of appeal, for which execution will issue.

Heiskell and Senter, JJ., concur.