MOTOR SERVICE COMPANY et al., Plaintiff in Error, v. H. B. TEUTON, Defendant in Error.

Western Section. July 15, 1932.

Petition for Certiorari denied by Supreme Court, February 14, 1933.

598

Pearson & Hewgley, of Jackson, for plaintiff in error.

S. J. Everett and A. W. Wilde, both of Jackson, for defendant in error.

SENTER, J.    This suit originated before a Justice of the Peace in Madison County, and is a suit by defendant in error, H. B. Teuton, against Motor Service Company, Commercial Credit Company, and the Globe Rutgers Fire Insurance Company of New York, to recover on insurance policy on an autombile which was destroyed by fire. The judgment of the Justice of the Peace was appealed to the Circuit Court of Madison County, where the case was there tried before the Circuit Judge and a jury, resulting in a judgment in favor of plaintiff below, and against the defendant Globe & Rutgers Fire Insurance Company of New York, in the sum of $450.    A motion for a new trial by said defendant was overruled, and from the action of the court in overruling its motion for a new trial and rendering judgment on the jury verdict, defendant Globe & Rutgers Fire Insurance Company prayed and was granted an appeal in the nature of a writ of error to this court.

The appeal was not properly perfected, in that the appellant did not execute an appeal bond in the sum required by the order granting the appeal and by law, and for the further reason that the appeal bond was not filed within the time allowed by law. However, after the motion by defendant in error had been made to dismiss the appeal because of the defective appeal bond, and because it had not been filed within the time allowed by law, and had been sustained by this court, by a consent order made in the cause in this court, the appellant was permitted to file the record for error upon the execution of a proper bond, and to have the assignments of error and the brief in support thereof, and the reply brief which had already been filed, and also the transcript of the record which had already been filed, treated as having been filed as upon writ of error, and the appeal to be heard and disposed of upon the assignments of error.

Since the judgment in this case was against the Globe & Rutgers Fire Insurance Company only, and no judgment against the other two defendants, the parties will be referred to as in the court below, H. B. Teuton, plaintiff, and Globe & Rutgers Fire Insurance Company of New York, as the defendant.

By the first assignment of error it is said that there is no competent or material evidence to support the verdict and judgment. By the second assignment it is said that the court erred in overruling defendant's motion for a peremptory instruction in its favor at the conclusion of plaintiff's proof and also at the conclusion of all the proof for the reasons set forth in said motion. The third, fourth, and fifth assignments are directed to the charge of the court, and certain portions thereof. The sixth assignment complains of the action of the court in refusing to give in charge to the jury special request No. 2 tendered by the defendant. The seventh, eighth and ninth assignments are directed to the action of the court in overruling defendant's exceptions to certain evidence, and challenges the competency of the evidence admitted over the objection of the defendant.

In disposing of the several assignments of error we will take them up in inverse order, and in order to do so we will state the theory of the plaintiff, and his right to recover under his contention.

It appears that plaintiff had formerly been engaged as an automobile salesman in Jackson. On or about August 12, 1929, plaintiff purchased a Chrysler Roadster automobile, referred to as Model 72, and for which he contracted and agreed to pay the Motor Service Company, of Jackson, Tennessee, the sum of $1205, and the further sum of $89.12 for carrying charges, and in the purchase of the automobile the seller took a second-hand automobile from plaintiff at the agreed valuation of $700, leaving the total balance due from plaintiff

to the seller, Motor Service Company, the sum of $594.12, which included the $89.12 carrying charges. This amount was divided into monthly notes of $49.51. Under the contract of sale between plaintiff and the Motor Service Company, title to the automobile was retained by the seller. At the time of the purchase of said automobile by plaintiff from the Motor Service Company, it was understood and known between the seller and the purchaser that the matter would be handled through the Commercial Credit Company, a finance corporation of Memphis, and these notes and the contract were transferred or assigned by the Motor Service Company to the Commercial Credit Company. The $89.12 referred to in the record as ''carrying charges,'' covered the interest, examination fees as to creditor's responsibility, and insurance against fire and theft up to 80% of the value of the automobile at the time of its purchase, or 80% of the selling price, which was 80% of the $1205, or $954. Plaintiff had paid three of these installment notes when the automobile was destroyed by fire. As to these facts there is little or no controversy between the parties.

On the same day that the automobile was destroyed by fire, the Motor Service Company notified the Commercial Credit Company of the loss by fire. Soon thereafter a Mr. Vorhees, claiming to be an adjuster for the Globe & Rutgers Fire Insurance Company, was in Jackson, and a Mr. Sharp who was at that time employed by the Motor Service. Company as bookkeeper, and who had prepared the papers, including the sales contract and the title installment notes and the assignment of the same to the Commercial Credit Company, drew up the proof of loss by fire of this automobile, and sent same to Mr. Vorhees, or rather gave the proofs of loss to Mr. Vorhees. Mr. Sharp stated that Mr. Vorhees was there for the purpose of adjusting this claim with plaintiff, and that he had Mr. Teuton to sign the proof of loss which he delivered to Mr. Vorhees. It also appears that the Commercial Credit Company, who held and owned the installment notes, represented to Mr. Sharp that it had collected the notes, and that Mr. Teuton would have to look to the Globe & Rutgers Fire Insurance Company for any settlement that he expected. No insurance policy on this automobile was ever delivered to or in the possession of plaintiff, Teuton. It appears from the evidence that it is the custom of the Commercial Credit Company to negotiate the insurance on the automobiles, title notes to which are held by it, and to retain the fire insurance policy until the notes have been paid. Plaintiff gave written notice by duly registered letter to the defendant Globe & Rutgers Fire Insurance Company to produce the policy of insurance. The Globe & Rutgers Fire Insurance Company did not reply to this letter, nor did it produce the policy sued on. However,

it appears that when Mr. Vorhees was in Jackson claiming to be the adjuster for the Globe & Rutgers Fire Insurance Company, he showed to Mr. Sharp a fire insurance policy issued in favor of the Commercial Credit Company and H. B. Teuton jointly, issued by the Globe & Rutgers Fire Insurance Company, and claimed that it was the policy covering on this automobile which had been destroyed by fire. Mr. Sharp testified that the Globe & Rutgers Fire Insurance Company was printed on the policy that Mr. Vorhees showed to him. He also testified that Mr. Vorhees furnished the blanks for the proof of loss which was on the form of the Globe & Rutgers Fire Insurance Company.

Under the seventh assignment of error the competency of questions and answers 63 and 64 by Mr. Sharp is challenged on the ground that there was no evidence that Mr. Vorhees was an adjuster for any of the defendants. These questions and answers are as follows:

"Q. 63. Did you draw any proof of loss on this car? A. I did.

"Q. 64. To whom did you send it? A. Mr. Vorhees, as adjuster."

By the eighth assignment the following questions and answers in the evidence of Mr. Sharp, admitted over the objection of the defendant, is said to be incompetent and inadmissible as being hearsay, irrelevant and immaterial. These questions and answers are:

"Q. 4. Did he have with him an insurance policy on this car? A. What he said was an insurance policy.

"Q. 7. Did he or not tell you that was the policy on this car? A. Yes."

The same objection was made to the following evidence, admitted by the court, and were questions asked by the court, and covered by the ninth assignment of error:

"The Court: Did you examine the policy?

"Witness: Not closely.

"The Court: Do you know what company it was on?

"Witness: He said Globe & Rutgers. There was Globe & Rutgers across the top. It was one of Globe & Rutgers forms.

"The Court: What?

"Witness: This paper, he said it was the policy covering this particular car."

We think this evidence was competent when considered in the light of and in connection with the other evidence by the same witness, Mr. Sharp, who had stated that Mr. Vorhees was in Jackson for the purpose of adjusting this loss according to the statement made by Mr. Vorhees.

On cross-examination, Mr. Sharp was asked several questions with reference to Mr. Vorhees' visit in connection with this fire loss, by the attorney for the defendant, and among them the following:

"Q. And you never saw any policy of insurance issued on this particular automobile? A. Saw a copy of the policy.

"Q. Where? A. Mr. Vorhees had it.

.  .  .  .  .  .

"Q. Did you ever see an insurance policy on this automobile? A. I saw what was supposed to be one.

"Q. Payable to any other than Commercial Credit Company? A. Commercial Credit Company and H. B. Teuton, with Commercial Credit Company holding title to secure the note?

"Q. You say Mr. Vorhees had that? A. Yes."

This witness, C. L. Sharp, also testified that while he was in the employ of the Motor Service Company, in Jackson, as bookkeeper, it was a part of his duties to prepare conditional sales contracts, title notes, assignments of same, etc., for his company. He testified that the $89.12 carrying charge included the premium on this particular automobile, and that it covered the premium on 80% of the sales price of the car, of $1205, less 2% per month depreciation, and that plaintiff paid this amount to the Commercial Credit Company, and that the same was included in the aggregate balance represented by the installment notes, and three of which had been paid by plaintiff at the time of the fire. The sale contract which had been assigned by the Motor Service Company to the Commercial Credit Company provided that insurance would be carried against loss by fire and theft for an amount not less than the amount of the balance due and owing on the car. But this witness further testified that the Credit Company furnished to the Motor Service Company a chart showing the insurable value of automobiles, and this chart is filed as an exhibit to his evidence; that by this chart the insurable value on the car was 80% of its sale value, less 2% per month depreciation; and that plaintiff paid the premium, or an amount sufficient to cover the premium, in purchasing the car, on the basis of 80% of the insurable value, or rather 80% of the value of the automobile, which was and represented the insurable value. This witness also testified that he had a conversation with the Credit Company, meaning a representative in Memphis, and was advised from that source that the Credit Company had collected the insurance to the amount of its notes on this car. This evidence was admitted only as against the defendant Credit Company. Shortly thereafter, this Mr. Vorhees appeared in Jackson for the ostensible purpose of adjusting this fire loss with Mr. Teuton, and had the conversation with Mr. Sharp. In view of the fact that Mr. Teuton requested proof of loss, and furnished the blank form of the defendant Globe & Rutgers Fire Insurance Company upon which the proof of loss was duly made out, and delivered to Mr. Vorhees; and the further fact that Mr. Vorhees then had in his possession and

showed to Mr. Sharp what purported to be a fire insurance policy on this car, and which was on the Globe & Rutgers form of policy, and which purported to insure the car against fire, payable to the Commercial Credit Company and H. B. Teuton, jointly, in the absence of any evidence to the contrary, we think would be sufficient to warrant the inference and conclusion that Mr. Vorhees was the agent and adjuster for the Globe & Rutgers Company. This evidence was at least competent as tending to show that a fire insurance policy had been issued by the Globe & Rutgers Insurance Company insuring this car against loss by fire up to 80% of the sale value of the car, less the depreciation. It results that the assignments of error on the subject of the competency of this evidence are overruled.

The portions of the charge complained of by the third and fourth assignments are as follows:

"The facts necessary to make out the plaintiff's case are contained in his contention about this lawsuit, which is that prior to the bringing of this lawsuit the plaintiff purchased from the Motor Service Company, of Jackson, Tennessee, a Chrysler automobile, the motor number of which has already been read to you from the warrant; that he paid by the exchange of another car a part of the purchase price, and executed a note payable in installments for the balance, and that this note and the contract were transferred by Motor Service Company to Commercial Credit Company of Memphis, Tennessee, and that it was agreed that the purchaser, Teuton, should pay to Motor Service Company an amount sufficient to carry fire insurance on said automobile in the amount of 80% of the value of the automobile with a deduction of 2% per month for depreciation; that the insurance was in force and he paid the amount of the premium to Motor Service Company, and that Motor Servcie Company transferred the contract and paid the amount of the premium on carrying charges to the Commercial Credit Company, and that Commercial Credit Company effected insurance on the automobile in accordance with this agreement with Globe & Rutgers Fire Insurance Company of New York; and that the policy of fire insurance was in existence at the time the automobile was destroyed by fire, and that as a matter of fact, during the existence of the policy of insurance, the automobile was destroyed by fire.

"If the plaintiff has shown these facts by a preponderance of the evidence, the plaintiff is entitled to a verdict at your hands against the Globe & Rutgers Fire Insurance Company.

"If the plaintiff has failed to show these facts by a preponderance of the evidence, or if the evidence equally balances as to this, the plaintiff would not be entitled to a verdict against Globe

& Rutgers Fire Insurance Company, and your verdict should be for the defendant, Globe & Rutgers Fire Insurance Company."

. . . . . .

"The defendants deny further that any insurance in this case was written by Globe & Rutgers Fire Insurance Company and the burden of proof is on the plaintiff to show that fact, that the policy of insurance was written by Globe & Rutgers Fire Insurance Company, before you can find a verdict for the plaintiff against that insurance company. If you fail to find from the proof by a preponderance of the evidence that these are the facts, or if the evidence equally balances, that such a policy was issued, then your verdict should be for the defendant insurance company."

The portion of the charge complained of under the fifth assignment of error is as follows:

"If you find in the case for the plaintiff and against Globe & Rutgers Fire Insurance Company you will return that as your verdict. If you find in favor of Globe & Rutgers Fire Insurance Company, and in favor of the plaintiff against the other defendant, Motor Service Company and Commercial Credit Company, you will return your verdict in that way, and if you find in this case that these parties agreed to effect insurance for 80 % of the value of the car, and that that policy was issued by Globe & Rutgers Fire Insurance Company, you will look to the evidence to see what was the value of the car and the damages that resulted from the fire, and you will return a verdict that you find for the plaintiff and set out in dollars and cents you find for the plaintiff. If you find for the defendants in this case, you will return a verdict that you find for the defendants."

The criticism made by appellant as to these portions of the general charge, is that the court charged in substance, that it was not necessary for the jury to find the terms, conditions and/or provisions, in the alleged policy of insurance in order to return a verdict for the plaintiff, but that the plaintiff would be entitled to recover a judgment against this appellant if the jury found that it issued a policy as claimed by the plaintiff, and the loss occurred while such policy was in force.

We do not think that this criticism made of the charge can be sustained. The Court very definitely charged the jury the conditions and circumstances under which plaintiff would be entitled to recover, and fully charged the theory of the plaintiff, and fully charged that it devolved upon plaintiff to prove that the policy had been issued

and for the amount claimed, and that the loss by fire had been sustained while the policy of insurance was in force.

We are also of the opinion that the sixth assignment of error cannot be sustained, which is based upon the refusal of the trial judge to give in charge to the jury special request No. 2 offered by the defendant. We think this request is fully covered by the general charge to the jury.

We are also of the opinion that there was some evidence to support the contention of plaintiff, and to warrant the submission of the case to the jury.

Under the assignments of error, it is contended that in this State a parol contract of insurance is not valid. This subject is fully discussed in the case of Continental Insurance Co. v. Schulman, 140 Tenn., 481, 205 S. W., 315, and in the case of Banker v. Insurance Co. of North America, 9 Tenn. App. Rep., 622, and in the cases cited therein. But we do not have here an action to recover on an alleged parol contract of insurance. It is the contention of plaintiff that the defendant insurance company in the present case issued a policy of insurance, insuring this automobile against loss or damage by fire, and that said insurance policy was in force at the time the fire occurred. It is also well settled that the burden is upon the plaintiff, in the first instance, to prove the existence and validity of the contract or policy of insurance sued on. (33 C. J. 106-7.)

It is also true that in an action based upon an insurance policy, the policy contract sued on must be in evidence, or its contents proved, where the policy cannot be produced. (33 C. J., 129, and cases cited thereunder; Fidelity Phoenix Fire Ins. Co. v. Sadau, 159 S. W., 137; Smith v. Cash Ins. Co., 1 Pitts. R., 428 (Pa.).

In the present case either the original policy sued on, or a copy thereof, was in the possession of the defendant insurance company. It appears that Mr. Vorhees, who claimed to be the adjuster for the defendant Insurance Company, had in his possession a policy of fire insurance in favor of the Commercial Credit Company and the plaintiff Teuton, and the name of the defendant Insurance Company appeared on the policy. Notice was given by the attorney for plaintiff to the defendant Insurance Company by registered mail, to produce the policy. The defendant did not reply to this letter, nor did it comply with the request or notice to produce the policy.

Upon a failure to produce the policy, the plaintiff was entitled to prove the policy contract by secondary evidence. We think that there is some evidence in the record to warrant the conclusion that Mr. Vorhees was the adjuster and agent of the defendant Insurance Company, and was in Jackson, Tennessee, to see plaintiff with reference to adjusting this fire loss, and that he had with him blank proof

or form of loss on the form of the defendant Insurance Company. The proof of loss was made out and delivered to Mr. Vorhees by Mr. Sharp. He also had with him what purported to be the policy of insurance, and from which it appeared, according to the evidence of Mr. Sharp, that this policy was on the form and bore the name of the Globe & Rutgers Fire Insurance Company of New York, and that it was payable to the Commercial Credit Company and to the defendant H. B. Teuton. There is evidence in the record that defendant H. B. Teuton paid to the Commercial Credit Company through the Motor Service Company, a sufficient amount to cover the premium on the policy for 80% of the value of the car, less 2% per month depreciation, and that the car was destroyed by fire three and one-half months after the contract was made, which would result in a 7% depreciation on this basis, and that the premium therefore paid was sufficient to put insurance in force for the 80% valuation on the sales value basis, less the 7% depreciation. It is true there is no direct evidence in the record that this premium was actually paid. However, it does appear that the defendant Credit Corporation who owned the title notes on this car, received the amount of its debt, and that in connection with the fact that the policy had been issued, and in connection with the further fact that the adjuster was in Jackson to adjust this loss after the credit corporation had been satisfied, would be some evidence that the insurance had been put into effect according to the agreement entered into between the Commercial Credit Company and plaintiff. If the Commercial Credit Company received from plaintiff as a part of the $89.12 carrying charges, an amount sufficient to put into effect insurance to the amount of 80% of the value of the automobile, it owed to plaintiff the duty of putting said insurance into effect, and so as to protect the plaintiff as well as the Commercial Credit Company. There are circumstances and facts, above referred to, to warrant the conclusion that the Commercial Credit Company carried out its agreement by putting the insurance in effect according to the agreement, and for the amount of 80% of the value of the automobile, and that the automobile was therefore insured by the defendant for the amount of 80% of the value of the automobile at the time of its purchase, less the 7% depreciation.

This was the view taken by the learned trial judge in concurring in the jury verdict, and in overruling the motion for a new trial.

We find some evidence in the record to support the verdict.

It follows that the assignments of error are overruled, and the judgment of the lower court is affirmed. Appellant and surety on the appeal bond, or the bond for writ of error, will pay the cost of this appeal.

Heiskell and Owen, JJ., concur.