SOL EPSTEIN, Appellant, v. GREAT AMERICAN
INSURANCE CO., Appellee. —392 S.W.(2d) 331.

Western Section. March 11, 1965.

Certiorari Denied by Supreme Court June 21, 1965.

448

Leo Bearman, Sr., and Leo Bearman, Jr., Memphis, for appellant.

Fred E. Ivy, Jr., Memphis, and Donald F. Connors, New York City, Nelson, Norvell, Wilson & Thomason, Memphis, of counsel, for appellee.

BEJACH, J. In this cause, Sol Epstein, who was complainant in the lower court, appeals from a decree of the Chancery Court of Shelby County dismissing his bill filed against the appellee, Great American Insurance Company, which company was defendant in the lower court. The defendant, Great American Insurance Company, also appeals, because, although the Chancellor dismissed complainant's bill, he held that defendant's agent, Ernest Wilson, by his agreement with complainant, had bound defendant to issue a policy of marine insurance on complainant's yacht; but that such policy, if and when issued, did not insure against the loss sustained by complainant. In this opinion, the parties will be styled, as in the lower court, complainant and defendant, or referred to as "Epstein" and "the Insurance Company".

Complainant was the owner of a yacht which he kept in a boat house on the river front in Memphis. Complainant, who was himself a licensed insurance broker, had for several years, through the agency of Ernest Wilson, a representative of defendant, carried marine insurance on his yacht. During the year preceding May 1962, he had, however, insured his yacht through the agency of J. P. Edrington & Company. This policy was, however, issued by and through the agency of Carpinter & Baker of New York, which firm specialized in wet marine insurance. Complainant admits that he knew wet marine insurance to be a special type of insurance, and that his previous policy had been issued as the result of his application therefor, by and through the Carpinter & Baker agency, though sold to him by the J. P. Edrington agency. Prior

to the expiration of the Edrington policy, Ernest Wilson solicited this insurance from complainant and undertook to place it for him in the Great American Insurance Company, which company, along with several other insurance companies, Wilson represented. Complainant contends that Wilson issued a binder insuring his yacht in the Great American Insurance Company under an all risk form of policy. Wilson also testified to the same effect. Wilson took the Edrington policy of the preceding year and forwarded it to Carpinter & Baker on May 23, 1962, along with a letter which stated, ''Attached is previous carriers policy for the above assured. Please have your marine department renew this for me. I have insured this boat for some six years with other agencies.'' No policy was, however issued. In February 1963, complainant's yacht sank. In fact, it sank twice within a period of two or three days. After it was raised from the first sinking, it was stored in the boat house, but a wind storm blew the boat house down on to the yacht. After the wind storm, the boat was reported to be still afloat, but within a day or two, it sank again. Complainant made claim against defendant through its agent Ernest Wilson for $5,000 which had been the agreed valuation of the yacht, plus $515.00 for incidental expenses incurred in raising it from the first sinking. The proof tends to show that after raising the yacht the second time, the cost of restoring it to normal condition would exceed the value of the yacht.

Complainant undertakes to explain the long delay—more than eight months from the time of the alleged binder until the sinking of the yacht—by testifying that he had, from time to time, carried a number of policies with Ernest Wilson and that on many occasions several months would elapse between the issuance of the policies and delivery of same, or billing therefor.

Complainant's theory is that defendant, the Great American Insurance Company, was bound by the oral agreement made by its agent, Ernest Wilson, to issue an "all risk" marine policy; and, secondarily, that even if the defendant were obligated to issue only a "named peril" policy, it would still be liable, on the theory that the wind storm which blew the boat house down and caused the sinking of the yacht, was a "peril of the sea" included in the "named risk" form of policy. He seeks to enforce his contentions by specific performance of the agent's promise to issue defendant's policy and by recovery under the provisions of such policy.

Defendant's theory, on the other hand, is that with wet marine insurance being a specialized type of insurance, it is handled exclusively on the basis of policies issued through Carpinter & Baker, or other authorized agency, and acceptance of application therefor, and that no agent of the defendant company, from the president on down, had authority to bind the company, other than by acceptance of the application and issuance of the policy. Mr. Herman S. Gerregano, a special agent of defendant, testified to that effect.

The Chancellor held that the defendant was bound by the oral binder issued by its agent, Ernest Wilson, but that the type of policy which it was obligated to issue was a "named peril" form of policy, which form of policy did not cover the loss sustained by complainant. Accordingly, he dismissed complainant's bill. Complainant excepted, prayed and perfected his appeal to this court. As stated above, the defendant also prayed and perfected its appeal, and claims in this court, as it did in the lower court that the defendant was not obligated to issue any form of policy.

452

We will dispose first of the defendant's appeal, because, if that is sustained, all of complainant's contentions, both primary and secondary, become immaterial.

■ A provisional application for wet marine insurance is merely a request for insurance and there is no contract of insurance until the application has been accepted. 44 C.J.S. Insurance sec. 232(d), p. 988; Delaware Insurance Co. v. S. S. White Dental Mfg. Co., 3 Cir., 109 F. 334, 48 C.C.A. 382, 65 L.R.A. 387; Gauntlett v. Sea Ins. Co., 127 Mich. 504, 86 N.W. 1047; St Paul Fire & Marine Ins. Co. v. Pure Oil Co. (C.C.A. N.Y.) 63 F.(2d) 771; Freimuth v. Glens Falls Ins. Co., 50 Wash.(2d) 621, 314 P.(2d) 468.

■ The complainant has the burden of proving that a valid contract of insurance existed. Motor Service Co. v. Teuton, 15 Tenn.App. 597.

■ The duration of an oral contract for insurance is limited to the time reasonably necessary for the insuror or its agent to issue a written contract or policy of insurance. Continental Ins. Co. v. Schulman, 140 Tenn. 481, 205 S.W. 315; Insurance Co. of N. America v. Banker, 9 Tenn.App. 622; Arnold v. Locomotive Engineers Mutual Life & Acc. Ins. Ass'n, 30 Tenn.App. 166, 204 S.W.(2d) 191.

■ The burden of proving that an oral contract of insurance exists is substantially greater with respect to an unusual type of insurance. West v. Aetna Ins. Co., 11 Tenn.App. 118.

■ Specific performance will not be decreed where the situation of the parties is such that it would be harsh, inequitable, oppressive, or result in an unconscionable advantage. Caldwell v. Virginia Fire & Marine Ins. Co., 124 Tenn. 593, 139 S.W. 698.

■ Applying the above cited authorities to the facts of the instant case, we find that complainant, himself a licensed insurance broker, was familiar with the fact that wet marine insurance is a special type of insurance, policies for which are issued only after application therefor and acceptance of the application. He had carried wet marine insurance on his yacht some six years prior to the time here involved. We hold that eight months was too long a time for defendant to be bound under an oral binder issued by its agent.

In Continental Insurance Company v. Schulman, 140 Tenn. 481, 205 S.W. 315, where a fire loss occurred more than two months after the defendant insurance company's agent had obligated his company by oral contract to insure the loss, it was held that the insurance company was not liable because the duration of a binder or of an oral contract of insurance is limited to the time reasonably necessary for the insuror or its agent to issue a written contract or policy of insurance, and that two months was too long. From the opinion of the Supreme Court in that case, written by Mr. Justice Green (later Chief Justice), we quote as follows:

"As we have heretofore seen, the evidence in this case shows that it was usual and customary for insurance agents such as Cowden & Co. to undertake parol contracts of insurance binding their principals for the period between the application and the agent's first opportunity to write up the policy.

The proof shows that this period was ordinarily not more than a day or two. It never extended beyond a week.

How then can it be said to have been within the apparent scope of the authority of Cowden & Co. to bind

the defendant company by a parol contract of insurance for a period of more than two months? There is no justification in the record for such a conclusion. On the proof before us such an undertaking would have been extraordinary." Continental Ins. Co. v. Schulman, 140 Tenn. 493, 205 S.W. 318.

In the instant case, the time which elapsed between the alleged oral binder and the loss which it is claimed that binder insured, was more than eight months. Add to that fact the circumstance that complainant was himself a licensed insurance broker who knew that wet marine insurance was a special type of insurance, policies for which are issued only after acceptance of application therefor, and we must conclude that complainant either knew or should have known that no policy of insurance on his yacht had been completed. Under the circumstances, his attempted explanation that in his former dealings with defendant's agent, Ernest Wilson, sometimes weeks or even months had elapsed before his polices were delivered, is, in our opinion, completely inadequate.

In West v. Aetna Insurance Co., 11 Tenn.App. 118, where is was shown that insurance companies ordinarily did not insure farm products other than baled cotton unless the barn or farmhouse in which such products were stored was also insured, and that insurance on such products would have to be obtained by application and acceptance of the application, this court held that an alleged binder for insurance of baled hay was beyond the apparent scope of authority of the insurance agent there involved, and that the insurance company was not liable for the burning of some baled hay which had occurred two days after the alleged oral binder had been issued.

In Caldwell v. Virginia Fire & Marine Insurance Co., 124 Tenn. 593, 139 S.W. 698, where specific performance of an alleged oral agreement to renew a fire insurance policy, based on oral agreements of the defendant's agent, was sought, the Supreme Court held that the complainant seeking specific performance was estopped to assert such claim by reason of his knowledge that written endorsement of such renewal on the policy itself was necessary. Specific performance was denied on that ground, and also because the granting of specific performance in such case would be harsh and inequitable. In that case the fire loss involved occurred after the complainant's old policy had expired, but during the term for which it is claimed the agent had agreed to renew the policy. From the Supreme Court's opinion, written by Mr. Justice Buchanan, we quote as follows:

"The substance and effect of the estoppel set up in the defendant's answer is that on August 29, 1908, the date of the alleged oral contract sued on, the complainant was the holder of a policy of insurance issued by the defendant, which expired September 9, 1908, in which policy there was the stipulation, hereinbefore set out, precluding complainant from claiming any privilege or permission affecting the insurance under that policy, unless the privilege or permission should be written on the policy or attached in writing to the policy, that of this stipulation in the policy, by which he was bound, the complainant had notice carried home to him that only by writing indorsed on the policy could it be renewed, and that an oral agreement to renew it was in fraud of the rights of the defendant, and therefore that complainant is estopped to set up the oral contract made in fraud of the defendant's rights.

We think this equitable estoppel set up as a matter of defense in the answer is good against the complainant. We know it may be said that the oral contract contemplated the execution of a new printed or written evidence of the contract of insurance beginning at the instant of the expiration of the old evidence or policy, and that each of these evidences constitute in and of themselves different contracts, but the answer to this suggestion is that the parties, the amount of indemnity, and the subject-matter or property, and the cause of the loss, contemplated by the oral contract were the same as in the printed policy on which the estoppel is said to arise.

\* \* \* \* \* \*

His hope of relief therefore depends upon his right to the equitable remedy of specific performance. He cannot in a court of equity expect a decree for damages for the breach of a contract of which the court of equity under its peculiar principles would refuse to decree the specific performance. His proof only shows an oral agreement of date August 29, 1908, to renew a policy then existing when it should expire on a future date, and he is now saying in this forum by the alternative prayer of his bill 'decree for me a specific performance of this oral contract, I am entitled to it *ex equo et bono.*' Is he so entitled? Is he not bound by the estoppel, and otherwise disentitled? The remedy of specific performance is governed by the same rules which control the administration of other equitable remedies; the right to it depends upon elements, conditions and instances, which equity regards as essential to its peculiar modes of relief. He who seeks equity must do equity, and he who comes into equity must

come with clean hands. The contract must be perfectly fair, equal, and just in its terms and in its circumstances. The contract and situation of the parties must be such that the remedy of specific performance will not be harsh or oppressive. Pomeroy, Eq.Jur. vol. 3, secs. 1404, 1405." Caldwell v. Virginia Fire & Marine Insurance Co., 124 Tenn. 609-610, 611-612, 139 S.W. 702-703.

■ In substance and effect, the situation of complainant in the instant case differs from that of complainant in the Caldwell case only in that, in the instant case, the alleged oral binder is corroborated by the testimony of the agent himself. That circumstance cannot, however, either enlarge the agent's actual or apparent authority or improve complainant's right to have specific performance decreed.

For the reasons hereinabove stated, it is our opinion that defendant's appeal must be sustained. We therefore hold that the Chancellor erred in ruling that complainant was entitled to have any form of wet marine insurance policy issued to him, including a "named peril" form of policy. The Chancellor held that complainant was entitled, by way of specific performance, to have issued to him a policy of wet marine insurance, but that such policy would be against "named perils" only, which would not include the damage or loss sustained by complainant. He therefore dismissed complainant's bill, in which result we concur, although for a different reason.

■ The above ruling made by us necessarily disposes of complainant's contentions, both that he was entitled to have issued to him an "all risk" policy which would certainly cover and include his loss, and also his claim that under a "named peril" policy he would be covered,

because the sinking of his yacht caused by the weight of the boat house on it, was in turn caused by the wind storm which blew down the boat house. On the second contention of complainant, even if we are wrong in ruling that complainant was entitled to no policy at all, we would feel constrained to hold that the Chancellor's decree must be affirmed, because the evidence in the record does not preponderate against the Chancellor's ruling. Sec. 27-303 T.C.A. Even though Ernest Wilson, defendant's agent, corroborated complainant's testimony that the binder issued by Wilson was for an all risk policy, the evidence shows that previous policies had been "named peril" policies. Even the failure of defendant to produce the Edrington policy, the terms of which were to be included in the policy for which the alleged binder was issued, is insufficient to turn the preponderance of the evidence against defendant and in favor of complainant. For that reason, as well as for the reasons stated above, the defendant's appeal will be granted and its assignments of error sustained; and the complainant's assignments of error will be overruled.

It results that the decree of the Chancery Court of Shelby County dismissing complainant's bill will be affirmed. The costs of the cause will be adjudged against complainant Sol Epstein and the sureties on his appeal bond and on the cost bond filed in the lower court.

Avery P.J. (W.S.), and Carney, J., concur.